UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

| | | |
|---|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| – against – | : | |
| | : | Adv. Pro. No. 08-01789 (SMB) |
| BERNARD L. MADOFF INVESTMENT | : | SIPA LIQUIDATION |
| SECURITIES LLC, | : | (Substantively Consolidated) |
| Defendant. | : | |

-------------------------------------------------------------X

In re:                                                   :
                                                         :
     BERNARD L. MADOFF,                                  :
                                                         :
                          Debtor.                        :

-------------------------------------------------------------X

## MEMORANDUM DECISION REGARDING
## OMNIBUS MOTIONS TO DISMISS

**A P P E A R A N C E S :**

BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, NY 10111

> David J. Sheehan, Esq.
> Nicholas J. Cremona, Esq.
> Keith R. Murphy, Esq.
> Amy E. Vanderwal, Esq.
> Anat Maytal, Esq.
>      Of Counsel

WINDELS MARX LANE & MITTENDORF, LLP
156 West 56th Street
New York, NY 10019

> Howard L. Simon, Esq.
> Kim M. Longo, Esq.
>      Of Counsel

*Attorneys for Plaintiff, Irving H. Picard, Trustee for the*
*  Liquidation of Bernard L. Madoff Investment Securities LLC*

SECURITIES INVESTOR PROTECTION CORPORATION
805 Fifteenth Street, N.W., Suite 800
Washington, DC 20005

      Josephine Wang, Esq.
      Kevin H. Bell, Esq.
      Lauren T. Attard, Esq.
        Of Counsel

*Attorneys for the Securities Investor Protection*
  *Corporation*

*Attorneys for Defendants*
(See Appendix)

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

      Defendants in 233 adversary proceedings identified in an appendix to this opinion have

moved pursuant to Rules 12(b)(1), (2) and (6) of the Federal Rules of Civil Procedure to dismiss

complaints filed by Irving H. Picard ("Trustee"), as trustee for the substantively consolidated

liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities

Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq.* ("SIPA") and the estate of Bernard L.

Madoff.[1]  The complaints seek to recover fictitious profits allegedly withdrawn by the defendants

from their BLMIS accounts.  In addition, many non-moving defendants have stipulated with the

Trustee to be bound by this decision.

      The defendants in 128 adversary proceedings represented by the law firm Becker &

Poliakoff LLP[2] filed motions to dismiss (the "*B&P Motions*") supported by *Defendants'*

---

[1]      The number of motions was actually greater, but several of the adversary proceedings were subsequently
dismissed or the motions were withdrawn.

[2]      The defendants represented by Becker & Poliakoff and the corresponding adversary proceedings are listed
in Exhibits A and B to a *Notice of Motions to Dismiss* filed in each affected adversary proceeding.  *See, e.g., Notice
of Motions to Dismiss*, dated Oct. 31, 2013 (ECF Adv. Pro. No. 10-04292 Doc. # 35). "ECF" refers to the docket in

*Omnibus Memorandum of Law in Support of Motions to Dismiss*, dated Nov. 1, 2013 ("*B&P Memo*") (ECF Adv. P. No. 10-04292 Doc. # 36),[3] and the Trustee and the Securities Investor Protection Corporation ("SIPC") filed opposition.[4]  Prior to the return date of the *B&P Motions*, defense counsel representing former BLMIS customers in other 105 adversary proceedings involving common legal issues requested consolidation of the *B&P Motions* with their own pending motions to dismiss ("*Non-B&P Motions*," and together with the *B&P Motions*, the "*Motions*").[5]  (*See Letter*, dated Feb. 6, 2014 (ECF Doc. # 5641).)  The Court held a status conference on February 14, 2014 in response to the letter request and outlined a process whereby the Trustee and SIPC would respond to the *Non-B&P Motions* on an omnibus basis.  The Trustee and SIPC filed their opposition,[6] and following the completion of briefing, the Court heard argument on September 17, 2014.

---

*SIPC v. BLMIS*, Adv. Pro. No. 08-01789.  "ECF" followed by an adversary proceeding number refers to the docket in that adversary proceeding.

[3]      The *B&P Memo* was filed in each adversary proceeding.

[4]      *See* (i) *Trustee's Memorandum of Law in Opposition to Defendants' Motions to Dismiss*, dated Jan. 17, 2014 ("*Trustee Memo I*") (ECF Adv. Pro. No. 10-04292 Doc. # 40), (ii) *Declaration of Nicholas J. Cremona, Pursuant to 28 U.S.C. § 1746, in Support of Trustee's Memorandum of Law in Opposition to Defendants' Motions to Dismiss*, dated Jan. 17, 2014 (ECF Adv. Pro. No. 10-04292 Doc. # 41), and (iii) *Memorandum of Law of the Securities Investor Protection Corporation in Opposition to Defendants' Motions to Dismiss*, dated Jan. 17, 2014 ("*SIPC Memo I*").  (ECF Adv. Pro. No. 10-04292 Doc. # 39.)  Like the *B&P Memo*, these documents were also filed in each adversary proceeding.

[5]      A list of the adversary proceedings included in the *Non-B&P Motions* is attached as *Appendix A* to the *SIPC Memo II* (defined *infra* note 5).

[6]      *See* (i) *Memorandum of Law in Opposition to Defendants' Motions to Dismiss*, dated Mar. 10, 2014 ("*Trustee Memo II*") (ECF Doc. # 5803), (ii) *Declaration of Nicholas J. Cremona, Pursuant to 28 U.S.C. § 1746, in Support of Trustee's Memorandum of Law in Opposition to Defendants' Motions to Dismiss*, dated Mar. 10, 2014 (ECF Doc. # 5804), and (iii) *Memorandum of Law of the Securities Investor Protection Corporation in Opposition to Defendants' Motions to Dismiss*, dated Mar. 10, 2014 ("*SIPC Memo II*").  (ECF Doc. # 5802.)

The *Motions* raise many of the same issues, and those issues are dealt with on an omnibus

basis.  Issues specific to a particular defendant, such as insufficient service of process, lack of

personal jurisdiction or defenses under state-specific non-claim statutes are not addressed in this

decision, and will be heard separately upon a scheduling request by the parties.  (*See Order*

*Scheduling Hearing on Becker & Poliakoff LLP Motions to Dismiss and Motions to Dismiss*

*Listed on Appendix A to the Trustee's February 20 Letter to the Court, as Amended*, dated July

24, 2014 (ECF Doc. # 7513).)  For the reasons that follow, the *Motions* are granted in part and

denied in part, and the parties are directed to settle orders or submit consent orders in each

adversary proceeding in accordance with this opinion.

## BACKGROUND

The facts underlying the Ponzi scheme perpetrated by Bernard Madoff have been

recounted in multiple reported opinions.  *See, e.g.*, *SIPC v. Ida Fishman Revocable Trust* (*In re*

*BLMIS*), 773 F.3d 411, 415 (2d Cir. 2014) ("*Ida Fishman*"), *pet. for cert. pending*, 83 U.S.L.W.

3746 (U.S. Mar. 17, 2015) (Nos. 14-1128, 1129); *Picard v. JPMorgan Chase & Co.* (*In re*

*BLMIS*), 721 F.3d 54, 58-59 (2d Cir. 2013), *cert. denied*, 134 S.Ct. 2895 (2014); *SIPC v. BLMIS*

(*In re BLMIS*), 424 B.R. 122, 125-32 (Bankr. S.D.N.Y. 2010), *aff'd*, 654 F.3d 229 (2d Cir.

2011), *cert. denied*, 133 S.Ct. 24 (2012).  The complaints allege the background in substantially

the same language, and these facts will not be repeated except to the extent necessary in the body

of this opinion.  For present purposes, it is enough to say that the complaints allege that the

defendants who received initial transfers from BLMIS withdrew more than they deposited, and

are net winners.  In the main, the Trustee seeks to avoid and recover these net winnings, or

fictitious profits, from the initial transferees and the defendant subsequent transferees.  In many

cases, the Trustee also seeks to avoid obligations owed by BLMIS to the defendants.

The Trustee concedes that the defendants lacked knowledge of Madoff's Ponzi scheme. Accordingly, his claims to avoid transfers are limited to intentional fraudulent transfers made within two years of December 11, 2008 (the Filing Date) under 11 U.S.C. §§ 546(e) and 548(a)(1)(A). *See Ida Fishman*, 773 F.3d at 423. Subject to the grant of the Trustee's petition for a writ of *certiorari* and reversal of the judgment in *Ida Fishman* by the Supreme Court, all other claims to avoid transfers asserted by the Trustee are dismissed. The balance of the Discussion deals solely with intentional fraudulent transfers made within two years of the Filing Date (the "Two-Year Period") and the subsequent transfers of those initial transfers. One portion also addresses the Trustee's claims to avoid fraudulent obligations.

The Discussion is organized in a manner that corresponds to the various arguments raised by many or all of the defendants. The headings are intended to assist in the organization of the opinion and are descriptive of the particular argument.

## DISCUSSION

### A.    Standing, Jurisdiction, Authority and Related Issues

#### 1.    The Trustee lacks Article III standing.

The Trustee is seeking to recover property that belonged to BLMIS' customers, not BLMIS, at the time of each transfer. Many defendants contend that the Trustee has failed to demonstrate Article III standing because the BLMIS estate never had an interest in the customer property that Madoff transferred, and because *in pari delicto* bars his claims. The Court disagrees.

A SIPA trustee administers two distinct estates, a general estate consisting of the property of the estate of BLMIS as defined in 11 U.S.C. § 541(a) and an estate consisting of customer

5

property.  *SIPC v. BLMIS*, 499 B.R. 416, 420 (S.D.N.Y. 2013) ("*Antecedent Debt Decision*")

("SIPA superimposes on the Bankruptcy Code a separate customer property estate that takes

priority over the debtor's general estate.")  "Customer property" includes "cash and securities

(except customer name securities delivered to the customer) at any time received, acquired, or

held by or for the account of a debtor from or for the securities accounts of a customer, and the

proceeds of any such property transferred by the debtor, including property unlawfully

converted," SIPA § 78*lll*(4), and property recovered by the Trustee pursuant to SIPA § 78fff-

2(c)(3), quoted below.  If the customer property exceeds the customer property claims, the

excess becomes part of the general estate.  SIPA § 78fff-2(c)(1) ("Any customer property

remaining after allocation in accordance with this paragraph shall become part of the general

estate of the debtor.").  Conversely, if the customer property is insufficient to fully satisfy the

customers' net equity claims, "such customers shall be entitled, to the extent only of their

respective unsatisfied net equities, to participate in the general estate as unsecured creditors."  *Id.*

To the extent consistent with SIPA, the liquidation is conducted in accordance with

chapters 1, 3 and 5 and subchapters I and II of chapter 7 of the Bankruptcy Code, SIPA §

78fff(b), and the trustee is vested with the same powers and title with respect to the property of

the debtor, including the right to avoid preferences, as any ordinary bankruptcy trustee.  SIPA §

78fff-1(b).  These powers are sufficient to avoid and recover transfers of the debtor's property,

but not customer property.  Money held by the broker on behalf of its customers is not property

of the broker under state law, and in an ordinary bankruptcy, a trustee cannot avoid and recover a

transfer of non-debtor property.  *Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199, 213 (2d Cir.

2014).

"SIPA circumvents this problem through a statutorily created legal fiction that confers standing on a SIPA trustee by treating customer property as though it were 'property of the debtor' in an ordinary liquidation." *Id.*; *accord Picard v. Chais* (*In re BLMIS*), 445 B.R. 206, 238 (Bankr. S.D.N.Y. 2011). SIPA § 78fff-2(c)(3) provides:

> Whenever customer property is not sufficient to pay in full the claims set forth in subparagraphs (A) through (D) of paragraph (1), the trustee may recover any property transferred by the debtor which, except for such transfer, would have been customer property if and to the extent that such transfer is voidable or void under the provisions of Title 11. Such recovered property shall be treated as customer property. For purposes of such recovery, the property so transferred shall be deemed to have been the property of the debtor and, if such transfer was made to a customer or for his benefit, such customer shall be deemed to have been a creditor, the laws of any State to the contrary notwithstanding.

With this fiction, the Trustee may exercise an ordinary trustee's powers under the Bankruptcy Code to avoid and recover preferential and fraudulent transfers of customer property for the benefit of the customer property estate. Hence, the trustee comes within the statute's "zone of interests" because SIPA authorizes him to recover fraudulent transfers of customer property, a status courts have referred to as prudential standing. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387 (2014).

The defendants contend that even if the Trustee has statutory or prudential standing, he lacks Article III standing. Constitutional, or Article III standing, "imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). To establish Article III standing, a party must show (1) an injury in fact that is actual or imminent rather than conjectural or hypothetical, (2) the injury is "fairly traceable" to the conduct complained of, and (3) it is likely, as opposed to speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

7

A fiduciary that sues as a representative of an insolvent estate to avoid and recover transfers for the benefit of that estate satisfies the requirement for Article III standing. *See Official Comm. of Asbestos Claimants of G-1 Holding, Inc. v. Heyman*, 277 B.R. 20, 33 (S.D.N.Y. 2002). Here, the estate of customer property suffered the injury in fact by virtue of BLMIS' fraudulent transfers of that property, the Trustee's lawsuits will redress that injury, and as discussed in the next section, the estate is insolvent. Any recovery from the defendants will be deemed customer property and replenish the funds available to satisfy the customers' net equity claims. Accordingly, the Trustee has established Article III standing.

Lastly, neither the doctrine of *in pari delicto* nor the rule of *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114 (2d Cir. 1991) bars the Trustee's claims. The doctrines are related, and subject to certain exceptions, prevent a debtor from suing third parties who conspired with the debtor's management to defraud the debtor. *See Picard v. JPMorgan Chase*, 721 F.3d at 63. Because the trustee stands in the shoes of the debtor, he cannot assert claims that the debtor could not assert under non-bankruptcy law. *Id.*

The Trustee's claims to avoid and recover customer property never belonged to the debtor under state law. Instead, they were created by Congress and conferred on the Trustee pursuant to SIPA § 78fff-2(c)(3) and the pertinent provisions of the Bankruptcy Code. Consequently, the aforementioned doctrines do not deprive the Trustee of standing or otherwise prevent him from asserting the avoidance claims against the defendants. *Fox v. Picard (In re BLMIS)*, 848 F. Supp. 2d 469, 483 (S.D.N.Y. 2012), *aff'd*, 740 F.3d 81 (2d Cir. 2014); *Nisselson v. Empyrean Inv. Fund, L.P. (In re Marketxt Holdings Corp.*), 376 B.R. 390, 423 (Bankr. S.D.N.Y. 2007); *Picard v. Taylor*, 326 B.R. 505, 513 (Bankr. S.D.N.Y. 2005). *Picard v. JPMorgan Chase*, 721 F.3d 54, cited by the defendants, is inapposite because it addressed the

8

Trustee's lack of standing to assert the creditors' own *common law* claims against third parties

who allegedly conspired with Madoff and BLMIS to defraud BLMIS, and ultimately, the

customers of BLMIS.  *Id.* at 67 (citing *Caplin v. Marine Midland Grace Trust Co. of N.Y.,* 406

U.S. 416 (1972)).  The Trustee is not asserting any common law claims that belonged to the

creditors under non-bankruptcy law.

**2.      The Trustee has no authority under SIPA § 78fff-2(c)(3) to pursue these avoidance actions.**

SIPA § 78fff-2(c)(3), quoted above, authorizes the Trustee to recover transferred

customer property "[w]henever customer property is not sufficient to pay in full the claims set

forth in subparagraphs (A) through (D) of paragraph (1)."  Several movants represented by three

firms – Becker & Poliakoff, Bernfeld Dematteo & Bernfeld and Wachtel Missry LLP – make

some variation of the argument that there is enough customer property to satisfy all customer

claims in full, and the Trustee therefore lacks authority or standing under SIPA § 78fff-2(c)(3) to

continue his avoidance actions.[7]  Defendants in several other adversary proceedings seek to

intervene pursuant to FED. R. CIV. P. 7024(b)(1) in two pending motions to dismiss,

(*Memorandum of Law in Support of Motion to Intervene and Be Heard on the Issue of the*

*Trustee's Standing to Recover Customer Property*, dated Mar. 17, 2014 (ECF Doc. # 5886)), and

make a similar argument.  (*Intervenors' Memorandum on the Limits of Trustee Standing to*

*Recover Customer Property*, dated Mar. 17, 2014 ("*Intervenors' Memo*") (ECF Doc. # 5886-1).)[8]

---

[7]      The Wachtel Missry defendants also seek a stay of their adversary proceedings until the estate's solvency can be determined.

[8]      The proposed intervenors moved, in the alternative, to submit their brief as *amicus curiae*.  The Trustee opposed both prongs of the motion, arguing that two of the signatory law firms had filed an aggregate of nearly thirty motions to dismiss without raising the "customer property fund issue," and had unduly delayed in seeking to raise the issue then.  In addition, they had failed to show that their interests were not adequately represented by the

The arguments are based on two premises: (1) the sufficiency of the customer property estate must be determined now or at some future date rather than when the SIPA proceeding or the underlying adversary proceeding was commenced; and (2) there is now (or there will be) enough aggregate property collected by the Trustee and the Madoff Victim Fund established by the United States Department of Justice to satisfy allowed customer claims in the case.

The legal argument centers on the construction of the introductory clause to SIPA § 78fff-2(c)(3) ("[w]henever customer property is not sufficient to pay. . . the trustee may recover"). These defendants contend that "whenever" means "at any time," and the use of the present tense ("is insufficient") necessarily focuses on the time of recovery. (*Intervenors' Memo* at 3-6.) In addition, SIPA includes several provisions that expressly refer to the filing date. S*ee* SIPA § 78*lll*(11) (defining net equity with reference to the amount that would have been owed to a customer had the debtor liquidated on the filing date); *id.* § 78fff-2(b) ("For purposes of distributing securities to customers, all securities shall be valued as of the close of business on the filing date."); *id*. § 8(c)(1)(D) ("For purposes of allocating customer property under this paragraph, securities to be delivered in payment of net equity claims for securities . . . shall be valued as of the close of business on the filing date."). The defendants maintain that the specification of the filing date in certain parts of SIPA indicates that Congress did not intend the use of the filing date as the measure in SIPA § 78fff-2(c)(3). (*Intervenors' Memo* at 6-7.)

---

other movants who raised the issue. (*Trustee's Limited Opposition to Motion to Intervene on the Issue of the Trustee's Standing to Recover Customer Property,* dated Mar. 28, 2014 (ECF Doc. # 6069).)

The motion to intervene is granted. The "customer property fund issue" affects all of the defendants, and the intervenors have raised statutory interpretation arguments in much greater depth than the treatment accorded the issue by the other movants. Finally, intervention will not unduly delay the proceedings or prejudice the Trustee. Other defendants raised the same issue, the Trustee responded to their arguments and also responded to the intervenors' argument.

Moreover, SIPA § 78fff-2(c)(3) borrows the Bankruptcy Code avoidance powers which

distinguish between the remedies of avoidance, *e.g.*, 11 U.S.C. § 548, and recovery. *See* 11

U.S.C. § 550. Its use of the word "recover" suggests that Congress intended to use the later date

of recovery as the time to test the sufficiency of the customer property fund. (*Id.* at 8.) Finally,

the defendants argue that the leading contrary authority, *Hill v. Spencer Sav. & Loan Ass'n*

(*In re Bevill, Bresler & Schulman, Inc.*), 83 B.R. 880 (D.N.J. 1988), is neither controlling nor

persuasive. (*Intervenors' Memo* at 8-12.) The Intervenors conclude, however, that it is

unnecessary to decide the proper interpretation of SIPA § 78fff-2(c)(3) now; the decision should

be made after the Trustee has avoided the transfer and before the entry of a money judgment.

(*Id.* at 12.)

The Trustee's opposition relies primarily on *Bevill, Bresler.* (*Trustee's Limited*

*Opposition to Motion to Intervene on the Issue of the Trustee's Standing to Recover Customer*

*Property*, dated Mar. 28, 2014, at 1-7 (ECF Doc. # 6069).) There, the SIPA trustee brought

actions to avoid and recover transfers. One of the disputed issues concerned the date on which to

value the customer property for purposes of SIPA § 78fff-2(c)(3). The defendants moved for

summary judgment arguing that the trustee was required to show an insufficiency at the time he

filed each avoidance complaint or when the judgment was entered in each case, *id.* at 892, and

contended that the trustee was then holding enough money to satisfy all of the customer claims in

full. *See id.* at 883.

The District Court disagreed ruling that "the date to be used for the valuation of the fund

of customer property is the SIPA filing date." *Id.* at 893. It observed that SIPA and the

legislative history were silent regarding the date on which to make the sufficiency valuation. *Id.*

at 892. In other situations, SIPA expressly required the use of the filing date to value certain

11

debts and liabilities.  The filing date was used to insulate the calculation from market

fluctuations.  *Id.*  The District Court concluded that "it would appear sensible to value the

customer fund as of the same time as the various other calculations that take place on the filing

date."  *Id.*

The District Court also expressed the concern that a floating valuation date would create

an enormous administrative burden on the trustee.  Requiring him to value the customer fund

each time the trustee filed a complaint or obtained a judgment would pose a logistical nightmare

and could delay or defeat valid claims because a customer property fund could fluctuate in value,

and once sufficient become insufficient.[9]  *Id.* at 893.  The District Court refused to impose this

burden on the trustee on the "speculative possibility" that an "unexpected sufficiency" would

allow the trustee to satisfy the customer claims in full.  *Id.*

The defendants' argument was also considered and rejected by the District Court in the

BLMIS case.  In *Picard v. Flinn Invs., LLC*, 463 B.R. 280 (S.D.N.Y. 2011), numerous

defendants moved to withdraw the reference to this Court on a variety of SIPA and other issues.

One of the issues concerned the date for determining the insufficiency under SIPA § 78fff-

2(c)(3) .

Judge Rakoff denied the motion to withdraw the reference on that issue.  Citing to and

quoting from the decision in *Bevill, Bresler*, he ruled

> [I]t has long been held that "the fund of customer property shall be valued for the
> purposes of 15 U.S.C. § 78fff–2 (c)(3) as of [ the filing date]," *In re Bevill,*
> *Bresler & Schulman, Inc.*, 83 B.R. 880, 898 (Bankr.D.N.J.1988), and no

---

[9]        For example, the customer property could include securities whose value goes up and down.  In addition,
the amount of the allowed customer claims can increase, as has occurred in this case.

> "substantial and material consideration of non-Bankruptcy Code federal statutes"
> is required to see why this is so: any different interpretation of § 78fff–2(c)(3)
> would cause the Trustee's powers to fluctuate, leading to a 'logistical nightmare.'"
> *Id.* at 893.

*Flinn*, 463 B.R. at 284.  Judge Rakoff noted that the Trustee might file a meritorious claim but

find out later that he could not pursue it for reasons having nothing to do with the claim itself.

*Id.*  In addition, the defendant who repaid the avoided transfer would be deemed to have a claim

allowing the creditor to recover at least some of what the trustee avoided.  *Id.*  The District Court

concluded that "only simple application of SIPA is required to resolve the issue Greiff presents,

and thus that the issue does not warrant withdrawal."  *Id.*

    The defendants argue that the discussion in *Bevill, Bresler* regarding the time to

determine the insufficiency was *dictum*, (*Intervenors' Memo* at 8), and *Flinn* did not decide the

issue on the merits.  (*Id.* at 11 n. 5.)  I disagree.  The *Bevill, Bresler* court acknowledged that it

was "theoretically possible" that the customer fund was insufficient on the SIPA filing date, but

the resolution of the issue was not likely to have a great impact on the case, in part, because the

trustee had presented evidence that the customer property would be insufficient regardless of the

date selected for valuation.  *Bevill, Bresler*, 83 B.R. at 891.  The District Court nevertheless

proceeded to decide the issue, *id.* at 892 ("Thus, as with determination of the 'filing date,' I must

choose the proper date with reference to the overall purposes of SIPA."), and held that the filing

date was the appropriate date to determine the insufficiency.  *Id.* at 893 ("Thus, I find that the

date to be used for valuation of the fund of customer property is the SIPA filing date, April 8,

1985, and I will grant the trustee's motion for partial summary judgment on this issue.").  Its

ruling was not *dictum*.

13

Furthermore, the *Flinn* Court decided not to withdraw the reference on the issue only because the answer was obvious in light the reasons given in *Bevill, Bresler*. Its decision reflected its conclusion that it was not required to engage in significant interpretation of SIPA § 78fff–2 (c)(3), and instead, called for the simple application of settled law. *Flinn*, 463 B.R. at 284 ("Accordingly, the Court concludes that, even assuming *arguendo* that this issue implicates non-bankruptcy aspects of SIPA, only simple application of SIPA is required to resolve the issue Greiff presents, and thus that the issue does not warrant withdrawal.") (citing *City of New York v. Exxon Corp.,* 932 F.2d 1020, 1026 (2d Cir.1991) (mandatory withdrawal required only where "a bankruptcy court judge [is required] to engage in significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes")). Thus, the *Flinn* Court actually considered the valuation date issue, and decided not to withdraw the reference based on its conclusion that the issue was correctly decided in *Bevill, Bresler*.

The courts' reasoning in *Bevill, Bresler* and *Flinn* are more persuasive than the defendants' arguments, but I nevertheless agree with the Intervenors that I need not reach the issue now and may never have to decide it. At the outset, the defendants have not challenged the legal sufficiency of the Trustee's allegations regarding the insufficiency of the customer property fund, and the Trustee has adequately pleaded the insufficiency. The allegations in *Picard v. Schiff Family Holdings Nevada Ltd. P'ship*, Adv. P. No. 10-04363 (SMB) and *Picard v. Jordan H. Hart Revocable Trust*, Adv. P. No. 10-04718 (SMB), the two proceedings in which the Intervenors have intervened, are typical.   The complaint in *Schiff Family Holdings* (¶ 16) and the second amended complaint in *Jordan H. Hart* (¶ 18) allege that the "assets will not be sufficient to reimburse the customers of BLMIS for the billions of dollars that they invested with BLMIS over the years. . . .  Absent this or other recovery actions, the Trustee will be unable to satisfy the

14

claims described in subparagraphs (A) through (D) of SIPA section 78fff-2(c)(1)." Thus, the

complaints plead that the customer property fund was insufficient at the time the pleading was

filed, and it is undisputed that it was insufficient before then. Furthermore, the Trustee has not

yet avoided any transfers. Hence, he is not in a position to recover money and it is unnecessary

to determine if the customer property fund is insufficient, a determination that raises a factual

issue.

Although the latter conclusion should end the inquiry for the present, the factual premise

of the defendants' argument – that the customer fund is presently sufficient or is likely to become

sufficient – is patently wrong and is based on an incorrect assumption relating to the Madoff

Victim Fund ("MVF') maintained by the Department of Justice. According to the *Trustee's*

*Thirteenth Interim Report for the Period October 1, 2014 through March 31, 2005*, dated Apr.

29, 2015 ("*Thirteenth Interim Report*") (ECF Doc. # 9895), almost $20 billion of principal was

lost in Madoff's Ponzi scheme and of the $20 billion, approximately $17.5 billion of principal

was lost by those who filed claims. (*Id.* at ¶ 1 n. 3.) As of March 31, 2015, allowed claims

totaled $13,568,096,668.92, (*id.* at ¶ 14), but the Trustee has recovered or has agreements to

recover approximately $10.6 billion. (*Id.* at ¶ 12.) There is currently a shortfall of $3 billion in

the customer property estate, and in denying SIPA claimants the right to an inflation or interest

adjustment on their claims, the Second Circuit described the prospect of full recovery as

"doubtful." *SIPC v. 2427 Parent Corp.* (*In re BLMIS*), 779 F.3d 74, 81 (2d Cir. 2015). The

notion that the customer property fund will ever be sufficient to pay 100% of the net equity

claims is speculative, and the undisputed facts show that at present it is insufficient.[10]

The movants contend, however, that the Court must add in the money in the MVF

overseen by the Department of Justice.  According to the web site maintained by Richard C.

Breeden, the Special Master, the Fund currently has approximately $4 billion. (*See*

www.madoffvictimfund.com (Home Page, n. 3) (last visited May 26, 2015).)  The addition of the

$ 4 billion, they argue, would render the customer estate solvent.

This argument lacks merit for two reasons.  First, the MVF does not meet SIPA's

definition of "customer property" as used in SIPA § 78fff-2(c)(3).   Money recovered by the

Department of Justice from third parties in settlement of their criminal or civil liability does not

appear to satisfy the definition of  "cash. . .  at any time received, acquired, or held by or for the

account of a debtor from or for the securities accounts of a customer, and the proceeds of any

such property transferred by the debtor, including property unlawfully converted,"[11]  SIPA §

78*lll*(4), and is certainly not money or property recovered by the Trustee pursuant to SIPA §

78fff-2(c).

Second, the beneficiaries of the MVF are not limited to SIPA customers and cover a

much wider array of victims.  The Special Master reports on the web site that the MVF protects

anyone who lost his or her own money as a direct result of investments rendered worthless by

Madoff's fraud.  It includes, for example, indirect investors who invested directly with BLMIS

---

[10]        In addition, the Trustee does not have any funds to make distributions to general creditors.  (*Thirteenth Interim Report* at ¶ 16.)

[11]        It is possible that customers could trace their unlawfully converted property into the MVF.  However, none have attempted to do so.

feeder funds.  Hundreds of millions of dollars were lost by indirect investors who do not qualify

as SIPA customers.  *See Kruse v. SIPC* (*In re BLIMS*), 708 F.3d 422, 426-27 (2d Cir. 2013).

Consequently, the universe of claims against MVF dwarfs the amount of SIPA customer

claims.  The Special Master reports in the web site that he has received 63,553 claims covering

losses of $76.654 billion, and if all of the claims were allowed, the victims would receive a 5%

distribution.  Although he has concluded that approximately 20% of the dollar value of the

claimed losses reviewed thus far appears to be ineligible, the Special Master estimates that "for

every one of the 2,500 claimants who have recovered payments through the bankruptcy, there

were at least another 20 victims whose money was also stolen."  Given the number and amount

of claims against the MVF asserted by non-SIPA customers, the $4 billion will not come close to

covering the shortfall in the SIPA customer property fund.

Accordingly, the motions to dismiss based on the Trustee's lack of authority under SIPA

§ 78fff-2(c) to avoid and/or recover fraudulently transferred customer property are denied.

### 3. The Court lacks the authority to enter final judgments under *Stern v. Marshall*.

Many defendants contend that the Court lacks the authority to enter a final judgment in

some or all of these adversary proceedings under the authority of *Stern v. Marshall*, 131 S.Ct.

2594 (2011).  Initially, the Supreme Court has held that bankruptcy judges have authority to

render proposed findings of fact and conclusions of law where they otherwise have subject

matter jurisdiction but lack the Constitutional authority to enter a final judgment in a statutory

core matter.  *See Exec. Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165, 2174 (2014).  The

jurisdiction to hear the Trustee's avoidance claims is conferred by 28 U.S.C. §§ 1334(b) and

157(a) and (b) and Order No. M 10-450 (S.D.N.Y. July 10, 1984), as amended by Amended

Standing Order of Reference, No. M 10-468, 12 Misc. 00032 (S.D.N.Y. Jan. 31, 2012).

Jurisdiction is also conferred by the provisions of SIPA discussed below.

Judge Rakoff decided the precise issue raised by the defendants after many of the

motions to dismiss had been filed.  *SIPC v. BLMIS*, 490 B.R. 46 (2013).  He concluded that *Stern*

prevented the Court from entering final judgments unless the avoidance claim provided a basis to

disallow the customer's net equity claim under 11 U.S.C. § 502(d),[12] and subsequently

concluded that § 502(d) applies to SIPA claims.  *SIPC v. BLMIS*, 513 B.R. 437, 443 (S.D.N.Y.

2014).

The Court's authority to enter a final judgment depends, therefore, on whether a

particular defendant filed a claim that is still subject to allowance or disallowance through the

claims allowance process.  If the defendant has filed a claim and the Trustee is seeking to

disallow the claim under § 502(d) based on the defendant's receipt of a fraudulent transfer, this

Court can enter a final judgment on the fraudulent transfer claim.  On the other hand, and subject

to the possibility of consent discussed in the next paragraph, the Court cannot enter a final

judgment against a defendant that never filed a claim because the lawsuit cannot implicate the

claims allowance process through § 502(d).  Similarly, no § 502(d) disallowance claim would lie

against a defendant who filed a claim that has been finally disallowed.  *Cf. Picard v. Estate of*

*Igoin* (*In re BLMIS*), 525 B.R. 871, 887-88 (Bankr. S.D.N.Y. 2015) (Trustee could not base

---

[12]     Section 502(d) states:

Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any
entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is
a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a)
of this title, unless such entity or transferee has paid the amount, or turned over any such property,
for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

personal jurisdiction on the filing of a SIPA claim that had been finally disallowed because the adversary proceeding did not implicate the claims allowance process).

In *Wellness Int'l Network, Ltd. v. Sharif*, --- S. Ct. ---, No. 13-935, 2015 WL 2456619, at *3 (May 26, 2015) the Supreme Court ruled that parties may consent to the final adjudication of a so called *Stern* claim[13] by a Bankruptcy Court. Consent can be express or implied but must be knowing and voluntary. *Id*. at *12. Quoting its prior precedent in *Roell v. Withrow*, 538 U.S. 580, 590 (2003), the Supreme Court explained that the "key inquiry is whether 'the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case' before the non-Article III adjudicator." *Wellness*, 2015 WL 2456619, at *12. Accordingly, consent provides another basis to permit the entry of a final judgment by this Court, and dismissal of the Trustee's claims for lack of jurisdiction is premature absent examination of the whether or not consent was given.

**4.    The proceedings must be dismissed because they have been commenced in the wrong court and defendants have been served with defective process.**

The defendants represented by Bernfeld, Dematteo & Bernfeld, LLP (Adv. P. Nos. 10-04349; 10-04394; 10-04396; 10-04408; 10-04468; 10-04560; 10-04561; 10-04717; 10-05094; 10-05231; 10-04361) argue that the adversary proceedings were commenced in the wrong court, and they were served with defective process. As a result, there is no jurisdiction - either subject matter or *in personam*. They contend that the District Court is vested with original jurisdiction over cases and proceedings, 28 U.S.C. § 1334(a), the bankruptcy petition must be filed and the case must be commenced in the District Court, and only then can the District Court refer the case

---

[13]    "A '*Stern* claim' is a claim that is 'core' under the statute but yet prohibited from proceeding in that way as a constitutional matter." *Wellness*, 2015 WL 2456619, at *13 n. 1 (Alito, J. concurring in part and concurring in the judgment) (citation and internal quotation marks omitted).

(or proceeding) to the bankruptcy court.  (*E.g. Defendants' Memorandum of Law in Support of Motions to Dismiss*, dated Feb. 18, 2014, at 6 (ECF Adv. Pro. No. 10-04349 Doc. # 24) ("[T]he District Court obviously cannot refer a proceeding that has not been commenced or filed in that court. Thus, the commencing of an adversary proceeding, such as the one at issue here, in the Bankruptcy Court rather than the District Court is improper and any act of this Court with respect to the same - such as the issuing of a summons - is a nullity.") (footnote omitted).

At the outset, the defendants overlook the fact that the SIPA proceeding was commenced in the District Court on December 11, 2008, and expressly "removed" by the District Court to this Court pursuant to SIPA § 78eee(b)(4), (*Order*, Civ. 08-01789 (S.D.N.Y. Dec. 15, 2008), at ¶ IX (ECF Doc. # 1)), which provides:

> Upon the issuance of a protective decree and appointment of a trustee, or a trustee and counsel, under this section, the court shall forthwith order the removal of the entire liquidation proceeding to the court of the United States in the same judicial district having jurisdiction over cases under Title 11.  The latter court shall thereupon have all of the jurisdiction, powers, and duties conferred by this chapter upon the court to which application for the issuance of the protective decree was made.[14]

Thus, once the SIPA proceeding was removed to this Court, this Court was authorized to exercise all of the powers of the District Court subject to the Constitutional limitations placed on Article I courts.

---

[14]    The reference to the "court of the United States in the same judicial district having jurisdiction over cases under Title 11" in SIPA § 78eee(b)(4) means the bankruptcy court.  Otherwise, the statute would lead to the absurd result of commanding the district court to refer the SIPA case to itself.  *Turner v. Davis, Gillenwater & Lynch* (*In re Inv. Bankers, Inc.*), 4 F.3d 1556, 1564 (10th Cir. 1993), *cert. denied*, 510 U.S. 1141 (1994); *Barton v. SIPC*, 185 B.R. 701, 703 (D.N.J. 1994).  Furthermore, this interpretation is consistent with Congress' intent that SIPA proceedings should be conducted like ordinary bankruptcy cases in the bankruptcy court.  *Turner*, 4 F.3d at 1564-65; *Barton*, 185 B.R. at 703.

More generally, the District Court has referred its bankruptcy jurisdiction to this Court. While 28 U.S.C. § 1334 grants the district court jurisdiction over bankruptcy cases and proceedings in the first instance, 28 U.S.C. § 157(a) authorizes the district court to refer its bankruptcy jurisdiction to the bankruptcy judges in the district.  The United States District Court for the Southern District of New York has referred its bankruptcy jurisdiction to the judges of this Court through Order No. M 10-450 (S.D.N.Y. July 10, 1984), as amended by Amended Standing Order of Reference No. M 10-468, 12 Misc. 00032 (S.D.N.Y. Jan. 31, 2012).  The defendants assume but cite no authority to support their central argument that the District Court cannot refer its bankruptcy jurisdiction prospectively.  In fact, courts in this district have uniformly recognized that the District Court's standing orders of reference confer bankruptcy court jurisdiction in cases and proceedings commenced after the date of the standing order of reference.[15]  *E.g.*, *ResCap Liquidating Trust v. Primary Capital Advisors, LLC* (*In re Residential Capital, LLC*), 527 B.R. 865, 869-70 (S.D.N.Y. 2014); *Pension Fin. Servs., Inc. v. O'Connell* (*In re Arbco Capital Mgmt., LLP*), 479 B.R. 254, 258 (S.D.N.Y. 2012).

If the bankruptcy case has been referred, all complaints and "and other papers required to be filed by these rules, except as provided in 28 U.S.C. § 1409, shall be filed with the clerk in the district where the case under the Code is pending."  FED. R. BANKR. P. 5005(a)(1).  The "clerk" means the clerk of the bankruptcy court if one has been appointed.  FED. R. BANKR. P. 9001(3).  Vito Genna has been appointed the clerk of this Court, (*see Order M-367*, dated Jan. 26, 2009), and in accordance with Rule 5005(a), all papers, including complaints in adversary proceedings

---

[15]     According to the statistics recently published by the Administrative Office of United States Courts, 936,795 bankruptcy cases were filed in 2014, and 36,488 adversary proceedings were filed for the 12-month period ending September 30, 2014.  Under the defendants' theory, the district courts would have been required to execute nearly one million orders of reference just in 2014.

must be filed with his office. In addition, the clerk of the court in which the complaint is filed is

the clerk that issues the summons. *See* FED. R. CIV. P. 4(b), made applicable to adversary

proceedings by FED. R. BANKR. P. 7004(a)(1).[16] Consequently, the complaints were properly

filed with and the summonses were properly issued by the clerk of this Court.

Finally, the defendants argue that the summonses are incorrect, "prejudicial" and

defective because they contained misstatements. Federal Civil Rule 4(a)(1), made applicable by

Federal Bankruptcy Rule 7004(a)(1), requires a summons to include the name of the court and

the parties, be directed to the defendant, state the name and address of the plaintiff's attorney,

state when the defendant must appear and defend and "notify the defendant that a failure to

appear and defend will result in a default judgment against the defendant for the relief demanded

in the complaint." In addition, the summons must be signed by the clerk and bear the court's

seal.

The defendants have not argued that the summonses fail to comply with Rule 4(a)(1).

Instead, they contend that the summonses are defective because the following warning appears at

the end of each summons:

> IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL
> BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY
> THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE
> TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE
> COMPLAINT

---

[16]    FED. R. BANKR. P. 7004(a)(2) authorizes the clerk to use an electronic signature ("s/") on the summons.
The defendants do not challenge the use of an electronic signature.

According to the defendants, the statement that their default would constitute implied consent to

the entry of a default judgment by the bankruptcy court misstates the law and constitutes a

jurisdictional defect.

I disagree.  First, the proper service of a summons containing the quoted warning[17]

followed by the defendant's default in pleading constitutes the defendant's implied consent to the

entry of a default judgment by the bankruptcy court, *Exec. Sounding Board Assocs. Inc. v.*

*Advanced Mach. & Eng'g Co.* (*In re Oldco M Corp*), 484 B.R. 598, 614 (Bankr. S.D.N.Y. 2012),

unless the defendant appears and raises the issue.  *Ariston Props., LLC v. Messer* (*In re FKF 3,*

*LLC*), 501 B.R. 491, 498-99 (S.D.N.Y. 2013).  Second, the defendants offer no authority to

support their contention that the issuance and service of the summons that complies with Federal

Civil Rule 4(a)(1) is ineffective because it contains a misstatement that does not prejudice the

defendant.  These defendants did not default in pleading because they filed timely motions to

dismiss, and raised the issue of the Court's authority to enter a final judgment in their motions.

Hence, they did not impliedly consent to the entry of a final judgment, much less a default

judgment, against them by this Court.

**B.     Due Process**

**1.     The Trustee's financial stake in his quasi-Governmental decisions violates
defendants' due process rights.**

The defendants represented by Becker & Poliakoff argue that the Trustee decides on

behalf of SIPC, a governmental agency, which avoidance actions to bring, retains a financial

stake in his litigations because he allegedly receives a 15% share of the fees paid to his law firm,

---

[17]     The form of summons used in these cases is based on Director's Procedural Form 250B.

and his financial interest in these litigations violates the defendants' due process rights. (*B&P Memo* at 5-7.)

SIPC was created by act of Congress in 1970 as a non-profit corporation, SIPA § 78ccc(a)(1), in response to customer losses resulting from stockbroker failures. *SIPC v. Barbour*, 421 U.S. 412, 413 (1975); *Bevill, Bresler*, 83 B.R. at 886. With certain exceptions, its members include all persons registered as brokers or dealers under 15 U.S.C. § 78o(b). SIPA § 78ccc(a)(2)(A). It is not "an agency or establishment of the United States Government." SIPA § 78ccc(a)(1)(A). Among its powers, SIPC may file an application for a protective decree in federal district court if it determines that a member of SIPC has failed or is in danger of failing to satisfy its obligations to its customers, and meets one of the conditions set forth in SIPA § 78eee(b)(1). *See* SIPA § 78eee(a)(3)(A). If the district court issues a protective decree, the "court shall forthwith appoint, as trustee for the liquidation of the business of the debtor and as attorney for the trustee, such persons as SIPC, in its sole discretion, specifies." SIPA § 78eee(b)(3). The SIPA proceeding is then referred to the bankruptcy court, SIPA § 78eee(b)(4), and the trustee is vested with the powers of a bankruptcy trustee, SIPA § 78fff–1(a), in addition to the powers granted under SIPA § 78fff–2(c)(3).

Finally, upon appropriate application, the bankruptcy court shall grant reasonable compensation for services rendered and reimbursement of proper costs and expenses by the trustee and his attorneys. SIPA § 78eee(b)(5)(A). SIPC must file its recommendations concerning the application. SIPA § 78eee(b)(5)(C). SIPC will advance the funds to pay the allowed fees and expenses if the general estate is insufficient to pay them. SIPA § 78eee(b)(5)(E). Where there is no reasonable expectation that SIPC will recoup the advances

with SIPA and the application and the recommendation agree, "the court shall award the amounts recommended by SIPC."  SIPA § 78eee(b)(5)(C).

As noted, SIPC is not a government agency; it is a not-for-profit corporation whose members include brokers and dealers.  Furthermore, although SIPC selects the Trustee, the district court must approve the selection and find that the trustee is disinterested.  SIPA § 78eee(b)(6).  The Trustee represents the estate, not SIPC, and like any other bankruptcy trustee, decides which avoidance and recovery actions to bring and whether to settle.  The Trustee is not the decision maker for SIPC, and SIPC and the Trustee can and sometimes do disagree on the actions the Trustee takes in the case.  *See, e.g.*, *SIPC v. Morgan, Kennedy & Co., Inc.*, 533 F.2d 1314 (2d Cir.) (sustaining SIPC's objection to the trustee's proposed treatment of each beneficiary of a trust as a SIPC customer), *cert. denied,* 426 U.S. 936 (1976); *In re Bell & Beckwith*, 93 B.R. 569, 575-80 (Bankr. N.D. Ohio 1988) (overruling SIPC objections to trustee's proposed settlement).

Finally, the trustee has no financial stake in the outcome of any litigation he pursues.  He and his firm are entitled to reasonable compensation like any other trustee and his counsel. *Compare* SIPA § 78eee(b)(5)(A) ("The court shall grant reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred . . . by a trustee, and by the attorney for such a trustee, in connection with a liquidation proceeding.") *with* 11 U.S.C. § 330(a)(1) (authorizing bankruptcy court to award "reasonable compensation for actual, necessary services" and "reimbursement for actual, necessary expenses," *inter alia*, to the trustee and his professionals).  Defendants' argument regarding the Trustee's share of the fees received by his law firm goes well beyond the four corners of the complaints they seek to dismiss, but in any

25

event, does not give him a financial interest in the litigation he pursues or deprive the defendants

of due process.[18]

Finally, the cases cited by defendants are distinguishable because they involve bias by the

adjudicator.  Two of the four concerned extreme cases of possible bias when the judge or

adjudicator presiding over a matter had a direct financial or personal interest in the outcome or

received a significant benefit from a litigant.  *See Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813,

822-24 (1986) (due process was violated when appellate judge who authored a precedential

decision on an unsettled question of insurance law adverse to an insurer based on its failure to

pay a claim had filed his own class action against an insurance company that raised the same

issue); *Tumey v. Ohio*, 273 U.S. 510, 531-33 (1927) (statute that permitted town mayor to

adjudicate prohibition violations and impose fines and tax costs against the accused upon

conviction violated due process because the fees and costs funded town expenses in which the

mayor lived and a portion was paid to the mayor).  A third case concluded that due process was

violated where an appellate judge received significant campaign contributions from a litigant

while the litigant's case was proceeding toward appellate review in the judge's court.  *See

Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 885-87 (2009).

The fourth case, *Withrow v. Larkin*, 421 U.S. 35 (1975), addressed whether the

combination of investigative and adjudicative functions in the same state agency violated due

---

[18]    Under defendants' theory, any ordinary bankruptcy trustee would similarly violate a defendant's due
process rights.  In every chapter 7 case, an interim chapter 7 trustee is selected by the United States Trustee, an
agency within the Department of Justice.  The election of a chapter 7 trustee by creditors is extremely rare, and the
interim trustee becomes the permanent trustee if no one is elected to replace him.  *See* 11 U.S.C. § 702(d).  The
chapter 7 trustee decides whether to prosecute or settle avoidance actions.  His compensation is based on a formula
dependent on the amount of money he distributes, *see* 11 U.S.C. § 326(a), and the amount he distributes depends on
the amount he recovers.  Furthermore, the chapter 7 trustee is usually a lawyer who typically retains his own firm as
his attorney.  *See* 11 U.S.C. § 327(a).  The firm receives compensation for its actual, necessary services, *see* 11
U.S.C. §§ 330, 331, and the trustee may be entitled to share in the firm's compensation.

process.  There, a state medical board was authorized to investigate whether a physician had

engaged in certain proscribed acts, and could refer the matter to the district attorney if it

concluded that criminal charges were warranted.  The same board could also suspend the

physician's medical license.  A physician charged with performing proscribed acts challenged

the combined investigative and adjudicative roles arguing that it denied him the right to a hearing

before a fair tribunal.  The Court observed that the combination of the investigative and

adjudicative functions may raise due process concerns, but the party challenging the combination

has a difficult burden of overcoming the presumption of the integrity of the adjudicator.  *Id.* at

47.  The Court rejected the physician's due process argument because there was no evidence that

the board had prejudged the merits of the matter it had investigated and counsel for the physician

was present throughout and knew the facts presented to the board.  *Id.* at 54-55.

Here, the Trustee is not the adjudicator of the claims he brings.  He investigates the

claims and brings litigation, but a judge decides the outcome.  Furthermore, although the Trustee

has an interest in the fees awarded to his firm and paid by SIPC, neither he nor his firm have an

interest in the outcome of any litigation he brings.

### 2.    The Trustee's calculation of the clawback exposure violates due process.

In *Picard v. Greiff,* (*In re BLMIS*), 476 B.R. 715 (S.D.N.Y. 2012) ("*Greiff*"), *aff'd on

other grounds*, 773 F.3d 411 (2d Cir. 2014), Judge Rakoff explained how to calculate fraudulent

transfer exposure in clawback action:

> As for the calculation of how much the Trustee may recover under these claims,
> the Court adopts the two-step approach set forth in *Donell v. Kowell*, 533 F.3d
> 762, 771–72 (9th Cir. 2008).  First, amounts transferred by Madoff Securities to a
> given defendant *at any time* are netted against the amounts invested by that
> defendant in Madoff Securities *at any time*.  Second, if the amount transferred to
> the defendant exceeds that amount invested, the Trustee may recover these net

profits from that defendant to the extent that such monies were transferred to that
defendant in the two years prior to Madoff Securities' filing for bankruptcy.

*Greiff*, 476 B.R. at 729 (emphasis added).

The Trustee's calculation of clawback relies on the Net Investment Method to compute a customer's net equity.  He offsets all deposits and withdrawals during the life of the account, but he cannot recover more than the amount transferred during the two years preceding the filing date.  The defendants represented by Becker & Poliakoff contend that the Trustee should be limited to a claim for withdrawals taken during the Two-Year Period reduced by the deposits made by the defendants during the Two-Year Period, *i.e.*, the Replenishment Credit method, (*B&P Memo* at 22-25), but Judge Rakoff expressly rejected that approach in *the Antecedent Debt Decision*, 499 B.R. at 427-28, and the Court will not revisit his conclusion.

In addition, these defendants contend that the Trustee's method of calculating their clawback exposure violates due process because it allows him to avoid transfers indirectly that occurred beyond the two-year period of limitations.  Counsel for these defendants, Becker & Poliakoff, signed the brief that pressed the same argument before Judge Rakoff.  (*Consolidated Memorandum of Law in Support of Motion to Dismiss Regarding Antecedent Debt Issues on Behalf of Withdrawal Defendants, as Ordered by the Court on May 12, 2012*, filed June 25, 2012, at 36-37 ("The Trustee's approach is clearly at odds with this Court's prior rulings that the Trustee may not avoid transfers that occurred more than two years before the commencement of these cases and it violates the due process rights of Defendants.") (footnotes omitted) (ECF Case no. 12 MC-00115 Doc. # 199).)  Judge Rakoff did not discuss the due process challenge but he could not have reached his conclusion in the *Antecedent Debt Decision* without implicitly rejecting it.  *See Camps Newfound/Owatonna, Inc. v. Town of Harrison, Maine,* 520 U.S. 564,

606 (1997) (Scalia J., dissenting) (observing that counsel in an earlier case had unquestionably raised an argument in its briefs and during oral argument, "and the Court could not have reached the disposition it did without rejecting it.")  Furthermore, this Court previously rejected a similar due process challenge.  *SIPC v. BLMIS*, 522 B.R. 41, 53 n. 8 (Bankr. S.D.N.Y. 2014).

To the extent the issue has not already been decided, the Court concludes that the defendants' due process challenge lacks merit.  As stated in the previous section, the Trustee is not a governmental actor, but even if he was, his computation of the defendants' clawback exposure is neither "arbitrary" nor "outrageous," and does not give rise to a claim for violation of due process.  *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1988) ("the touchstone of due process is protection of the individual against arbitrary action of government"); *Rochin v. California*, 342 U.S. 165, 172 (1952) (conduct that "shocks the conscience" violates due process); *Natale v. Town of Ridgefield*, 170 F.3d 258, 259 (2d Cir. 1999) (only a gross abuse of governmental authority can violate the substantive standards of the due process clause).  In fact, Judge Rakoff concluded that calculating the clawback exposure under the Net Investment Method rather than the Replenishment Credit Method is more equitable.  *Antecedent Debt Decision*, 499 B.R. at 427-28.  Accordingly, the Court rejects the defendants' challenge to the Trustee's method of computing their clawback exposure.

## C.     The BLMIS transfers of fictitious profits satisfied antecedent debts.

Bankruptcy Code § 548(c) provides a defense in a fraudulent transfer action to the extent a transferee takes "for *value* and in good faith," 11 U.S.C. § 548(c)(emphasis added).  The Trustee does not challenge the good faith of the defendants who made the *Motions*, and they can assert a defense under Bankruptcy Code § 548(c) to the extent they gave value to BLMIS.  "Value" includes the "*satisfaction* or securing of a present or *antecedent debt* of the debtor. . . ."

29

11 U.S.C. § 548(d)(2)(A) (emphasis added). Many of the defendants argue that the fictitious profits they received from BLMIS satisfied their claims against BLMIS including those arising from violations of federal securities law and state law (*e.g.*. fraud, breach of contract, breach of fiduciary duty, rescission). Consequently, they provided "value" to BLMIS in exchange for the fictitious profits.

The District Court has already rejected this argument twice. In *Greiff*, several defendants moved to dismiss the complaints alleging, among other things, that they had state law claims entitling them to the securities listed on their customer statements even though BLMIS failed to purchase those securities. 476 B.R. at 724. According to these defendants, BLMIS' "transfers discharged its liability on [their] claims," and consequently, they "took 'for value' under § 548(d)(2)(A)." *Id.* at 725.

The District Court disagreed. It concluded that transfers from BLMIS that "exceeded the return of defendants' principal, *i.e.*, that constituted profits, were not 'for value.'" *Id.* Instead, the "transfers must be assessed on the basis of what they really were; and they really were artificial transfers designed to further the fraud, rather than any true return on investments." *Id.* It found it unsurprising that "every circuit court to address this issue has concluded that an investor's profits from a Ponzi scheme are not 'for value.'" *Id.* (citing *Donell v. Kowell*, 533 F.3d 762, 771-72 (9th Cir.), *cert. denied*, 555 U.S. 1047 (2008); *Scholes v. Lehmann*, 56 F.3d 750, 757 (7th Cir.) (Posner, J.), *cert. denied,* 516 U.S. 1028 (1995) and *Sender v. Buchanan (In re Hedged-Invs. Assocs., Inc.)*, 84 F.3d 1286, 1290 (10th Cir. 1996)).

Judge Rakoff addressed the same issue a second time in *Antecedent Debt Decision*. Citing *Greiff*, he rejected the defendants' arguments that they had valid state law claims based on

their account statements reiterating that the fictitious account statements were invalid and unenforceable. *Antecedent Debt Decision*, 499 B.R. at 421 n. 4. In addition, assuming the BLMIS investors held claims for rescission to recover their principal investments, they had recovered their principal investments prior to the bankruptcy and had no state law claim for interest. *Id.* at 422. Finally, even if the defendants held valid claims under the federal securities laws or state law, the claims did not provide value as against the BLMIS customer property estate under SIPA. *Id.* at 422 n. 6.

Judge Rakoff's conclusions are consistent with the well-settled rule in Ponzi scheme cases that net winners must disgorge their winnings. "[I]nvestors may retain distributions from an entity engaged in a Ponzi scheme to the extent of their investments, while distributions exceeding their investments constitute fraudulent conveyances which may be recovered by the Trustee." *Balaber-Strauss v. Sixty-Five Brokers (In re Churchill Mortg. Inv. Corp.)*, 256 B.R. 664, 682 (Bankr. S.D.N.Y. 2000), *aff'd*, 264 B.R. 303 (S.D.N.Y. 2001); *accord Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC (In re Bayou Group, LLC)*, 439 B.R. 284, 337 (S.D.N.Y. 2010) ("[V]irtually every court to address the question has held unflinchingly that to the extent that investors have received payments in excess of the amounts they have invested, those payments are voidable as fraudulent transfers.") (internal quotation marks and citations omitted); *Picard v. Cohmad Sec. Corp. (In re BLMIS)*, 454 B.R. 317, 333 (Bankr. S.D.N.Y. 2011) ("[W]hen investors invest in a Ponzi scheme, any payments that they receive in excess of their principal investments can be avoided by the Trustee as fraudulent transfers."); *Gowan v. The Patriot Grp., LLC (In re Dreier LLP)*, 452 B.R. 391, 440 n.44 (Bankr. S.D.N.Y. 2011) ("The Court's conclusion that the Defendants did not provide 'reasonably equivalent value' for the payments in excess of principal is consistent with those courts that have

31

held that investors in a Ponzi scheme are not entitled to retain the fictitious profits they

received."). The rationale for the rule is that the Ponzi scheme participant does not provide any

value to the debtor in exchange for the fictitious profits it receives. *Scholes*, 56 F.3d at 757

("The paying out of profits to [the Ponzi scheme investor] not offset by further investments by

him conferred no benefit on the [entities involved in the Ponzi scheme] but merely depleted their

resources faster."); *Armstrong v. Collins*, No. 01 Civ. 2437 (PAC), 2010 WL 1141158, at *22

(S.D.N.Y. Mar. 24, 2010) ("By 'investing' in a Ponzi scheme run by the debtor, even

unwittingly, a person does not—strictly speaking—provide 'value.' This is because the money

invested simply perpetuates the debtor's fraudulent scheme: 'the longer a Ponzi scheme is kept

going the greater the losses to the investors.'") (quoting *Scholes*, 56 F.3d at 757)).

After *Greiff* and the *Antecedent Debt Decision* were decided, the Fifth Circuit Court of

Appeals reached the same conclusion in a case involving the R. Allen Stanford's Ponzi scheme.

*Janvey v. Brown*, 767 F.3d 430 (5th Cir. 2014). There, the defendants purchased certificates of

deposit from Stanford International Bank that promised high rates of return, and received back

their principal investments as well as guaranteed interest. The receiver appointed at the request

of the SEC sued the net winners under the Texas Uniform Fraudulent Transfer Act ("TUFTA")

to recover their net winnings (*i.e.*, the interest payments). The defendants argued that they were

contractually entitled to the interest they received, and consequently, gave value because the

interest payments discharged an antecedent debt. *Id.* at 433-34, 440.

Applying TUFTA, which defines "value" in the same way as Bankruptcy Code §

548(d)(2)(A), the Fifth Circuit held that the defendant had failed to give reasonably equivalent

value for the interest payments because the certificates of deposit were void and unenforceable.

Allowing the defendants to enforce their claims for contractual interest in excess of their deposits

would further the fraudulent scheme at the expense of innocent investors.  Since they had no

claim for interest, the payment of interest could not satisfy an antecedent debt.  *Id.* at 441-42.

The Court recognized that the conclusion was an exception to general principles of contract law

but the result was nevertheless commanded by the unique feature of Ponzi schemes:

> To be sure, courts often permit innocent plaintiffs to enforce contracts that are
> against public policy, but here, such "enforcement would further none of the
> policies generally favoring enforcement by an innocent party to an illegal
> bargain.... [A]ny award of damages would have to be paid out of money rightfully
> belonging to other victims of the Ponzi scheme."

*Id.* at 442 (quoting *Merrill v. Abbott* (*In re Indep. Clearing House Co.*), 77 B.R. 843, 858 (D.

Utah 1987).)[19]

Certain defendants attempt to distinguish *Janvey* on the basis that the Court was

interpreting "value" under the TUFTA rather than the Bankruptcy Code and applying Texas

contract law.  (*See Letter from Richard Levy, Esq. and Carole Neville, Esq. to the Court*, dated

Sept. 16, 2014, at 1 (ECF Doc. # 7962)) ("The *Janvey* decision is not persuasive because it was

decided as a matter of the Texas state avoidance statute and Texas contract law.")  As to the first

point, the *Janvey* Court relied on *Sender v. Buchanan* (*In re Hedged-Invs. Assocs., Inc.*), 84 F.3d

1286 (10th Cir. 1996) in reaching its conclusion that the creditors did not provide value for the

interest payments.  *Janvey*, 767 F.3d at 441-42 & nn. 65, 66.  The *Janvey* Court observed that

although *Hedged-Investments* was addressing the Bankruptcy Code, the provision of the Uniform

Fraudulent Transfer Act at issue "is 'virtually identical' to the corresponding provision of the

---

[19]    On a related point, the Second Circuit has recently held that SIPA does not allow an inflation or interest
adjustment to a customer's net equity claim.  *SIPC v. 2427 Parent Corp.*, 779 F.3d at 76.  The Court observed that
"[a]n inflation adjustment to net equity claims could allow some customers to obtain, in effect, a protection from
inflation for which they never bargained, in contravention of the text and purpose of SIPA, and *at the expense of
customers who have not yet recovered the property they placed in Madoff's hands.*"  *Id.* at 81 (footnote
omitted)(emphasis added).

Bankruptcy Code[.]"  *Id.* (quoting *Warfield v. Byron,* 436 F.3d 551, 558 (5th Cir.2006)).  The *Janvey* Court is, therefore, persuasive authority in interpreting "value" under the Bankruptcy Code.

As to the second point, the defendants argue that New York law would enforce a contract in favor of an innocent party.  (*See Letter from Richard Levy, Esq. and Carole Neville, Esq. to the Court*, dated Sept. 16, 2014, at 2-3.)  Initially, the Fifth Circuit noted the same policy but concluded that Ponzi scheme payments were an exception because any award of damages would be paid from the money rightfully belonging to other victims.  The defendants have failed to explain why the same reasoning would not apply under New York law.

Furthermore, the New York courts have rejected claims for "lost" fictitious profits in other contexts because a claimant cannot lose something that never existed.  For example, in *Hecht v. Andover Assocs. Mgmt. Corp.*, 979 N.Y.S.2d 650 (N.Y. App. Div. 2014)("*Andover II*"), the plaintiff brought a derivative action on behalf of Andover Associates (the "Fund"), which had invested in BLMIS, to recover damages, *inter alia*, from the Fund's accountants based on professional negligence.  The final BLMIS statement reported that the Fund had a balance of $14 million but the amount of its un-recouped investment was only $3.288 million.  *Hecht v. Andover Assocs. Mgmt. Corp*, No. 006100/09, 2010 WL 1254546, at *6 (N.Y. Sup. Ct. Mar. 12, 2010)("*Andover I*").  On appeal, the Appellate Division stated that the plaintiff could not recover the Fund's "lost profits," limiting its recovery to its un-recouped investment:

> It is undisputed that the profits reported by Madoff were completely imaginary.
> The fictitious profits never existed and, thus, Andover did not suffer any loss with
> respect to the fictitious sum.

34

*Andover II*, 979 N.Y.S.2d at 653.[20]

The *Hecht* Court relied on *Jacobson Family Invs., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,* 955 N.Y.S.2d 338 (N.Y. App. Div. 2012). There, the plaintiffs had also invested in BLMIS. Their last account statements showed an aggregate value of over $105 million but their aggregate net winnings were only slightly more than $3 million. They filed a claim under a fidelity bond for the "loss" of the value reflected in their last account statements, and the insurer rejected the claim asserting that the plaintiffs did not suffer losses on account of the non-existent profits that Madoff fraudulently attributed to them. *Id.* at 341-42.

Although the case involved the construction of an insurance policy, the Court's view of fictitious profits bears on the defendants' argument that New York law would permit an innocent investor to recover and retain fictitious profits generated through Madoff's Ponzi scheme. The plaintiffs argued, as the defendants do in these cases, that they had a UCC "security entitlement" to the phantom gains in their accounts.[21] The Appellate Division rejected the contention stating that "any protectable UCC 'interest' based on the fictitious value of securities only existed for as long as the Madoff scheme remained hidden." *Id.* at 345. As to the notion that the inability to recover fictitious profits constituted a "loss," the Court stated:

> JFI criticizes the *Horowitz* court's reliance on *In re Bernard L. Madoff Inv. Sec.,* arguing that the Bankruptcy Court was concerned with the application of SIPA, not state insurance law. However, the distinction is meaningless. Under either scenario, it is not reasonable to claim that the revelation that an asset, once thought to exist, did not exist, constitutes a "loss," whether for the purpose of a

---

[20]   The Appellate Division also concluded that the complaint stated a claim to recover fees paid to the accountant. *Andover II*, 979 N.Y.S.2d at 653.

[21]   *Letter from Richard Levy, Jr., Esq., Carole Neville, Esq. and Matthew A. Kupillas, Esq., to the Court*, dated Dec. 10, 2014 (ECF Doc. # 8703)("The [Second Circuit's] citation to Article 8 of the New York Uniform Commercial Code demonstrates its recognition that the securities entitlements rising in favor of a broker's customer are valid under New York law.").

claim under SIPA or under a fidelity bond.

*Id.* at 346.

The case to which the Appellate Division referred, *Horowitz v. Am. Int'l Group, Inc.*, No.

09 Civ. 7312 (PAC), 2010 WL 3825737 (S.D.N.Y. Sept. 30, 2010), *aff'd,* 498 F. App'x. 51 (2d

Cir. 2012), also involved an insurance claim arising out of the BLMIS Ponzi scheme.  The

plaintiffs' last BLMIS account statement indicated that their investment had a value of over $8.5

million, but the plaintiffs were actually net winners to the tune of $225,000.  They nevertheless

asserted a claim for the full limit under their fraud policy ($30,000) contending that they had a

reasonable expectation that their investments would yield earnings.  The defendant rejected the

claim because the plaintiffs had actually withdrawn more than they had invested.  *Id.* at *1.

In granting the motion to dismiss, the District Court concluded that the fictitious profits

were not lost through fraud; the plaintiffs "did not lose this money; they lost the mistaken belief

that they owned this money."  *Id.* at *7.  The Court then turned to the argument, sometimes made

in this case, that the plaintiffs suffered a loss because they could have withdrawn all of their

fictitious profits prior to the collapse of the Ponzi scheme.  Citing an unreported decision by

Judge Lifland in the BLMIS case, the District Court rejected the plaintiffs' contention:

> More importantly, assuming that this were possible, any withdrawals in excess of
> their deposits would have been made with other customers' initial investments,
> and would now be subject to claw back under the Bankruptcy proceedings.  *See
> id.* at 23–24.  Accordingly, Plaintiffs would not have been legally entitled to this
> money.

*Id.* (citation omitted).

In short, the few decisions that have considered fictitious profits arising out of

investments in BLMIS under New York law have concluded that they were not "lost" to the

extent they were not paid, and are not recoverable as an element of damages under the UCC or in

any other context in which the proposition was advanced.  Thus, there is no support for the

defendants' argument that they could recover fictitious profits as a matter of New York contract

law or their related argument that the payment of fictitious profits satisfied an antecedent debt.

Judge Rakoff also found a second reason to reject the defendants' "value" defense based

on a conflict with SIPA.  SIPA differentiates between the assets of the customer property estate

and the assets of the general estate.  Customers have priority in the customer property, and the

Trustee may invoke the Bankruptcy Code's avoidance provisions when the customer property

estate is insufficient to satisfy the customers' net equity claims.  *Greiff*, 476 B.R. at 727.

Allowing net winners to retain fictitious profits in satisfaction of state law claims would conflict

with SIPA's priority system and frustrate the Trustee's efforts to satisfy priority claims:

> [T]he Court finds that, when determining whether a transferee provides value,
> SIPA requires consideration not only of whether the transfer diminishes the
> resources available for creditors generally, but also whether it depletes the
> resources available for the satisfaction of customers' net equity claims and other
> priority claims.  As described above, a different approach would ignore both
> SIPA's distinctions between creditors and its specific concern for the depletion of
> the fund of 'customer property' available for distribution according to customers'
> "net equities."

*Id.* at 728 (footnote omitted).

The District Court reiterated and amplified its reasoning regarding the separate customer

property and general estates in the *Antecedent Debt Decision*, 499 B.R. at 424-26.  It also

rejected the defendants' argument that because the SIPA trustee has the same powers as an

ordinary bankruptcy trustee, he is subject to the same "value" defense under Bankruptcy Code §

548(c).  Judge Rakoff noted that the Bankruptcy Code applied "[t]o the extent consistent with the

provisions of this chapter," 15 U.S.C. § 78fff(b), and the SIPA trustee's powers "must be

37

interpreted through the lens of SIPA's statutory scheme." *Antecedent Debt Decision*, 499 B.R. at

423. SIPA grants the trustee the same avoidance powers as a bankruptcy trustee, and hence, the

power to rely on Bankruptcy Code § 548(a)(1)(A). Section 548(c) is a defense to avoidance, and

the Bankruptcy Code affirmative defenses may apply differently in a SIPA case. *Id.* at 424.

Judge Rakoff's extensive consideration of the antecedent debt/value issue would

normally foreclose further argument in this Court. Those moving defendants that participated in

the withdrawal of the reference of the antecedent debt/value issue have had their day in court and

Judge Rakoff's decisions are law of the case. Furthermore, Judge Rakoff returned the

proceedings to this Court "for further proceedings consistent with this Opinion and Order." *Id.*

at 430. This sounds like a mandate. Those moving defendants who did not move to withdraw

the reference on the antecedent debt/value issue are not similarly bound, but the persuasive force

of Judge Rakoff's decisions lead me to the same conclusions.

Notwithstanding the District Court's rulings, many defendants continue to argue that the

payment of fictitious profits satisfied an antecedent debt, and point to certain case law that post-

dated the briefing before the District Court on the antecedent debt/value issue or the decisions

themselves which, the defendants contend, require a different conclusion. Some cite *Official

Comm. of Unsecured Creditors v. Hancock Park Capital II, L.P. (In re Fitness Holdings Int'l,

Inc.)*, 714 F.3d 1141 (9th Cir. 2013). There, the debtor's shareholder, Hancock, made a series of

subordinated loans in the approximate aggregate sum of $24 million to the debtor. The debtor

had also borrowed approximately $9 million from Pacific Western Bank secured by all of its

assets. The debtor subsequently refinanced these debts by borrowing $25 million from Pacific

Western, secured by a lien on all of its assets, and used the proceeds to pay Hancock roughly $12

million in satisfaction of its unsecured promissory notes and Pacific Western's secured loan.  *Id.* at 1142-43.[22]

After bankruptcy ensued, the unsecured creditors committee sued Hancock alleging, *inter alia*, that the Hancock debt should be recharacterized as equity and the payment on account of its equity interest should be avoided as a constructive fraudulent transfer.  *Id.* at 1144.  Following conversion to chapter 7, the trustee continued the action.  The bankruptcy court dismissed all of the trustee's claims, and the district court affirmed, holding that the recharacterization claim was barred as a matter of law.  *Id.*

The principal issue on appeal to the Ninth Circuit was whether the bankruptcy court had the power to recharacterize the Hancock claim.  If recharacterized as an equity investment, the $12 million transfer to Hancock would represent a return of capital rather than the satisfaction of a debt, and preclude Hancock from asserting that it provided "reasonably equivalent value" in exchange for the transfer.  *Id*. at 1145-46.  Before reaching the issue, the Court recounted the general law that a "claim" is a right to payment, and "unless Congress has spoken, the nature and scope of a right to payment is determined by state law."  *Id*. at 1146.  "*Unless some federal interest requires a different result*, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."  *Id.* (quoting *Butner v. United States*, 440 U.S. 48, 55 (1979)) (emphasis added).  Citing *Fitness Holdings*, the defendants in this proceeding argue that "value" under Bankruptcy Code § 548

---

[22]    The decision does not explain why the outstanding balance on the Hancock loan was so much less (approximately 50%) of the aggregate amount of promissory notes issued by the debtor to Hancock.

must be determined by reference to non-bankruptcy law, and since they have claims under non-

bankruptcy law, the satisfaction of those antecedent debts constitutes value.

    *Fitness Holdings* was not a Ponzi scheme or SIPA case.  While its statement of the law is

correct, it does not address the particular rule in Ponzi scheme cases, applied by every

Bankruptcy and District Court Judge in this district and every Circuit Court that has considered

the issue – Ponzi scheme investors do not give value within the meaning of the fraudulent

transfer laws for the fictitious profits they receive.   Furthermore, *Fitness Holdings*, quoting

*Butner*, recognized that while claims and debts are usually based on state law rights, a federal

interest may require a different result.  The principal purposes of SIPA are to protect investors

against financial losses arising from their broker's insolvency and protect the securities markets

as a whole.  *In re BLMIS*, 654 F.3d at 235, 239; *accord Stafford v. Giddens (In re New Times*

*Sec. Servs., Inc.)*, 463 F.3d 125, 127 (2d Cir.2006); *see SIPC v. Barbour*, 421 U.S. at 415.  As

Judge Rakoff explained, interpreting value to include the satisfaction of claims against the

general estate would deplete the resources available to satisfy the customers' net equity claims

and other priority claims, and thereby undercut one of SIPA's principal goals.

    During oral argument, defense counsel also argued that the debt at issue in *Fitness*

*Holdings* was contractually subordinated, and the decision meant that the satisfaction of a

subordinated debt instrument constituted value.  (*See Transcript of Sept. 17, 2014 Hearing*, at

51:20-52:20 (ECF Doc. # 8636).)  By analogy, even if the damage claims comprising the BLMIS

debts are "subordinated" to net equity claims, the satisfaction of the damage claims should still

provide value for purposes of section 548(c).

*Fitness Holdings* did not distinguish between subordinated and senior debt, and cannot be read to support the argument that it doesn't make a difference for purposes of computing "value." The nature of the subordination was not discussed by the Court of Appeals with good reason. An examination of the bankruptcy court record reveals that the series of notes delivered by the debtor to Hancock were identical except for the date and amount. According to paragraphs 3(a) and 3(b) of each note, they were subordinated only to the senior debt of U.S Bank owing under a revolving credit agreement. (*See Declaration of Karen Brown in Support of Motion to Dismiss Complaint*, dated July 30, 2009, Ex. 1, 2, 4, 6-10 (ECF Case 2:09-ap 01610 Doc. # 17 & 17-1 (Bankr. C.D. Cal.)). The Ninth Circuit's decision did not mention the U.S. Bank debt, or even whether it had been satisfied or refinanced. In short, although the debtor's promissory notes were "subordinated," they were only subordinated to U.S. Bank, and nothing indicated that the U.S. Bank debt remained outstanding.

The defendants also cite the recent Supreme Court case *Law v. Siegel*, 134 S.Ct. 1188 (2014) for the proposition that courts cannot override the express language of the Bankruptcy Code § 548(c) based on notions of equity. (*See Omnibus Reply Memorandum of the Pryor Cashman Movants in Further Support of Their Motions to Dismiss the Amended Complaints*, dated Mar 17, 2014, at 17 (ECF Doc. # 5875); *Reply Memorandum of Law in Support of Defendants' Motion to Dismiss*, dated Mar. 17, 2014, at 18 (ECF Doc. # 5867)). Here, the Trustee is not relying on Bankruptcy Code § 105(a) to argue that the satisfaction of general claims does not provide value for the transfer of fictitious profits. He is relying on SIPA as well as the case law that has interpreted the meaning of "value" under the Bankruptcy Code and similar avoidance statutes and concluded that a Ponzi scheme investor does not provide value beyond his principal investment.

After Judge Rakoff decided the antecedent debt issue, the Second Circuit rendered three

decisions in the Madoff case, *Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199 (2d Cir. 2014),

*Krys v. Farnum Place, LLC* (*In re Fairfield Sentry Ltd.*), 768 F.3d 239 (2d Cir. 2014) and *Picard*

*v. Ida Fishman Revocable Trust* (*In re BLMIS*), 773 F.3d 411 (2d Cir. 2014).  After each

decision, which they viewed as intervening authority, certain defendants wrote letters to the

Court arguing that the particular decision undercut Judge Rakoff's analysis of value in a SIPA

case.  In *Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199 (2d Cir. 2014), the Trustee sought,

*inter alia*, to enjoin settlements between BLMIS feeder funds and their customers under

Bankruptcy Code § 105(a), contending that the settlements impeded the Trustee's ability to

recover fraudulent transfers from the settling feeder fund defendants.  *Id.* at 204, 205, 212.  The

Second Circuit affirmed the District Court's refusals to enjoin the settlements.  It concluded that

the Trustee had no greater legal interest in an unadjudicated fraudulent transfer than an ordinary

trustee.  *Id.* at 212-13.  Furthermore, the limited purpose of SIPA § 78fff-2(c)(3) was to allow a

SIPA trustee to avoid and recover the transfer of customer funds –non-debtor property – to the

same extent that a bankruptcy trustee could avoid and recover the transfer of debtor property.  *Id.*

at 213.  The defendants argue that this statement reinforces their contention, rejected in the

*Antecedent Debt Decision*, that the SIPA trustee is subject to the same "value" defense as the

ordinary bankruptcy trustee.  (*Letter from Richard Levy, Jr, Esq. and Carole Neville, Esq. to the*

*Court*, dated Sept. 4, 2014) (ECF Doc. # 7862).)

The defendants next point to *Krys v. Farnum Place, LLC*, 768 F.3d 239 (2d Cir. 2014).

In *Krys*, the British Virgin Islands ("BVI") liquidator of a BLMIS feeder fund (Sentry) sold

Sentry's customer claim in the BLMIS case to Farnum Place, LLC ("Farnum").  Three days after

the parties signed a trade confirmation, the Trustee announced the settlement of a significant

avoidance claim and Sentry's customer claim rose substantially in value.  As a result, the Trustee

decided not to seek approval of the transaction.  Farnum petitioned the BVI court, which

approved the sale of the claim over the liquidator's opposition.  The parties then returned to this

Court, and the liquidator sought an order disapproving the sale.  *Id.* at 242-34.

The principal issue was whether Bankruptcy Code § 1520(a)(2), which makes

Bankruptcy Code § 363 applicable to a foreign main proceeding, required this Court to approve

(or disapprove) the sale of the Sentry claim.  Reversing the Bankruptcy and District Courts, the

Second Circuit concluded that the Sentry claim was property within the territorial jurisdiction of

the United States, § 1520(a)(2) stated that § 363 applied to the transfer "to the same extent that [§

363] would apply to property of the estate," and the Court was not required to defer to the BVI

court under principles of comity.  *Id.* at 244-46.  Seizing on the Court's "to the same extent"

language, the defendants argue that SIPA §78fff-2(c)(3) uses similar language (permitting the

SIPA trustee to recover transfers of customer property "to the extent that such transfer is

voidable or void under the provisions of Title 11"), and reason that there is no basis to limit the

value defense based on non-statutory notions of priority and subordination.  (*See Letter from

Richard Levy, Jr., Esq., and Carole Neville, Esq., to the Court*, dated Sept. 30, 2014) (ECF Doc.

# 8051).)

Finally, defendants rely on *Ida Fishman*.  There, the Court of Appeals affirmed the

District Court's ruling that payments to customers were, *inter alia*, settlement payments and

subject to the safe harbor of Bankruptcy Code § 546(e) which limited the Trustee to recovering

intentional fraudulent transfers under 11 U.S.C. § 548(a)(1)(A) made within two years of the

petition or filing date.  *Ida Fishman*, 773 F.3d at 417- 23.  The Court also rejected the Trustee's

argument that affirmance would be inconsistent with the Court's Net Equity Decision, *In re*

*BLMIS*, 654 F.3d 229 (2d Cir. 2011), *cert. denied,* 133 S. Ct. 24 (2012), noting a distinction

between the SIPA and the Bankruptcy Code, and emphasizing that in enacting § 546(e),

Congress struck a balance and determined that the need for finality was paramount even in light

of countervailing equitable considerations. *Ida Fishman,* 773 F.3d at 423. The defendants argue

that the Court's holding confirms that the transfer of fictitious profits that satisfied state law

obligations constituted "value," and SIPA priorities cannot impair an otherwise valid defense

under Bankruptcy Code § 548(c). (*See Letter from Richard Levy, Jr., Esq., Carole Neville, Esq.

and Matthew A. Kupillas*, *Esq. to the Court*, dated Dec. 10, 2014 (ECF Doc. # 8703).)

The three decisions support the general proposition that SIPA §78fff-2(c)(3) is limited to

granting a SIPA trustee the additional power to recover the transfers of customer property, but

otherwise, the Trustee's fraudulent transfer claims proceed as they would in an ordinary

bankruptcy. It does not follow, however, that the defendants paid value in exchange for the

fictitious profits they received. First, the decisions did not address the question of value, and a

non-SIPA bankruptcy trustee can recover fictitious profits because transferees in a Ponzi scheme

do not give "value" within the meaning of the Bankruptcy Code beyond what they pay into the

scheme. Fictitious profits are not profits at all but distributions of other people's money based

on an arbitrary allocation of fraudulent bookkeeping entries. The three Second Circuit decisions

did not address this rule and it remains the majority view.

Second, although the *Ida Fishman* court emphasized the distinction between the goals of

SIPA and the Bankruptcy Code when discussing the statute of limitations incorporated into

Bankruptcy Code § 546(e), the two statutory regimes are not so easily separated with respect to

other aspects of fraudulent transfer litigation. Unlike § 546(e), there is no clear statutory

direction that the satisfaction of claims against the general estate provides value for the

44

fraudulent transfer of fictitious profits from the deposits made by other customers.  The "same

extent" language is tempered by the "to the extent consistent" with SIPA proviso.  The District

Court ruled that the antecedent debt defense urged by the defendants would minimize the

customer property fund and distributions to customers in contravention of one of the principle

purposes of SIPA.

Accordingly, the Court concludes that the payment of fictitious profits did not satisfy an

antecedent debt or provide value within the meaning of Bankruptcy Code § 548(c) and (d)(2)(A).

**D.     Pleading Deficiencies**

**1.      The Trustee has not established that the transfers were made with the intent
to defraud creditors; the Ponzi scheme presumption does not apply because BLMIS was
not a Ponzi scheme.**

In order to plead a legally sufficient fraudulent transfer claim under 11 U.S.C. §

548(a)(1)(A), the Trustee must plead that BLMIS made the subject transfer with the actual intent

to defraud.  The Trustee has relied upon the Ponzi scheme presumption, discussed below, to

satisfy this requirement.  Many defendants argue that the Ponzi scheme presumption does not

apply because Madoff did not perpetuate a Ponzi scheme.  First, BLMIS employed 200 people,

94% of whom conducted legitimate trades equal to 10% of the daily volume on the New York

Stock Exchange.  Only twelve BLMIS employees were involved in a dishonest investment

advisory business.  Second, the Ponzi scheme presumption should apply only to transfers to

equity investors and the Defendants were not equity investors in BLMIS.  The defendants did not

"invest" in BLMIS.  Third, a trade confirmation ticket produced by the Trustee confirms that

BLMIS conducted actual trades.  (*B&P Memo* at 25-28.)

"A 'Ponzi scheme' typically describes a pyramid scheme where earlier investors are paid from the investments of more recent investors, rather than from any underlying business concern, until the scheme ceases to attract new investors and the pyramid collapses." *Eberhard v. Marcu,* 530 F.3d 122, 132 n.7 (2d Cir.2008); *accord In re BLMIS*, 654 F.3d 229, 232 (2d Cir.2011) ("*Net Equity Decision*"), *cert. denied*, 133 S.Ct. 25 (2012); *see United States v. Moloney,* 287 F.3d 236, 242 (2d Cir.) ("A Ponzi scheme by definition uses the purportedly legitimate but actually fraudulently obtained money to perpetuate the scheme, thus attracting both further investments and, in many cases, new investors to defraud."), *cert. denied*, 537 U.S. 951 (2002). Some courts have applied a four factor test to determine if a Ponzi scheme existed: "1) deposits were made by investors; 2) the Debtor conducted little or no legitimate business operations as represented to investors; 3) the purported business operation of the Debtor produced little or no profits or earnings; and 4) the source of payments to investors was from cash infused by new investors." *Gowan v. Amaranth Advisors L.L.C.* (*In re Dreier LLP*), Adv. P. No. 10-03493, 2014 WL 47774, at *9 (Bankr. S.D.N.Y. Jan. 3, 2014) (citation omitted).

Once it is determined that a Ponzi scheme exists, all transfers made in furtherance of that Ponzi scheme are presumed to have been made with fraudulent intent. *Picard v. Merkin* (*In re BLMIS*), No. 11 MC 0012(KMW), 2011 WL 3897970, at *4 (S.D.N.Y. Aug. 31, 2011); *Christian Bros.*, 439 B.R. at 306 n.19; *Bear, Stearns Sec. Corp. v. Gredd* (*In re Manhattan Inv. Fund Ltd.*), 397 B.R. 1, 8 (S.D.N.Y. 2007). As one court explained:

> The logic for applying a presumption of actual intent to defraud in the Ponzi scheme scenario is tied to the fact that a Ponzi scheme "cannot work forever." When the pool of investors runs dry—as it will—the operator knows that the scheme will collapse and that those still invested in the enterprise will lose their money. "Knowledge to a substantial certainty constitutes intent in the eyes of the law," and awareness that some investors will not be paid is sufficient to establish actual intent to defraud.

46

*Christian Bros.*, 439 B.R. at 306 n. 19 (quoting *Martino v. Edison Worldwide Capital* (*In re Randy*), 189 B.R. 425, 438 (Bankr. N.D. Ill. 1995)).

A transferor's admissions made during a guilty plea or allocution are admissible to prove that the transferor engaged in a Ponzi scheme. *See Dreier,* 2014 WL 47774, at *11. In pleading that Madoff perpetrated a Ponzi scheme through BLMIS, the Trustee relied on Madoff's allocution.[23] Madoff admitted during his allocution that "for many years up until my arrest on December 11, 2008, I operated a Ponzi scheme through the investment advisory side of my business, Bernard L. Madoff Securities LLC." (Madoff Allocution, at 23:14-17, (*United States v. Madoff*, No. 09 Cr. 00213 (S.D.N.Y. Mar. 12, 2009) (DC) (ECF Doc. # 50).) He admitted that he falsely represented to investors that he would invest their money in the securities of large, well-known corporations, but never invested the in the securities as promised. (*Id.* at 24:9-17.) Instead, he deposited the investors' funds in a Chase bank account and "when clients wished to receive the profits they believed they had earned with me or to redeem their principal, I used the money in the Chase Manhattan bank account that belonged to them or other clients to pay the requested funds." (*Id.* at 24:18-22.) Madoff allocuted to all of the elements of a Ponzi scheme, and accordingly, the Trustee has sufficiently pleaded that BLMIS made the transfers he seeks to avoid and recover with actual fraudulent intent for purposes of 11 U.S.C. 548(a)(1)(A).

The defendants' contrary arguments lack merit. Their first and third points – which refer to the number of BLMIS employees that worked for the investment advisory business and the existence of an actual trade confirmation – rely on facts outside of the Trustee's pleadings, and

---

[23]    The Trustee also relied to the same effect on the allocution of former BLMIS employee Frank DiPascali. *See United States v. DiPascali*, No. 09 Cr. 764 (RJS) (S.D.N.Y. Aug. 11, 2009) (ECF Doc. # 11).)

cannot be considered on a motion to dismiss.[24]  As to the second point, the defendants do not cite

authority for the distinction they draw between fraudulent schemes involving investments in

equity and those involving investments in debt, and the District Court has already rejected this

contention as a "distinction without a difference" because the BLMIS investors faced the same

risks as equity investors.  *Greiff*, 476 B.R. at 726.

The Court agrees that there is no distinction.  The hallmark of all Ponzi schemes is the

use of "the investments of new and existing customers to fund withdrawals of principal and

supposed profit made by other customers," and Madoff's activities fit the definition.  *Net Equity

Decision*, 654 F.3d at 232.  It does not matter whether the fraudster stole money by inducing his

victims to invest in debt or equity.  Charles Ponzi orchestrated his eponymous scheme borrowing

money on his own promissory notes, *see Cunningham v. Brown*, 265 U.S. 1, 7-8 (1924), and

those who issue their own fraudulent debt are treated as Ponzi schemers.  *See, e.g., Dinsmore v.

Squadron, Ellenoff, Plesent, Sheinfeld & Sorkin*, 135 F.3d 837, 838 (2d Cir. 1998) ("This class

action suit arises from a massive 'Ponzi scheme' perpetrated by Towers Financial Corporation

('Towers') whereby Towers raised approximately $245 million through fraudulent offering

memoranda and kept its failing enterprise afloat by using the principal payments of investors to

make interest payments to other investors.").  Furthermore, the term Ponzi scheme has been used

in appropriate circumstances to describe activities by a broker dealer and investment advisor that

induced clients to entrust their funds for the purpose of investing in ostensibly legitimate

securities.  *See, e.g., New Times Secs. Servs.*, 463 F.3d at 126 ("Goren conducted a Ponzi scheme

using the two brokerage houses (the 'Debtor').  He solicited investments in fictional money

---

[24]      This is not meant to suggest that the arguments otherwise have merit.

48

market funds; he pretended to invest in genuine money market funds; and he issued fraudulent promissory notes."). In fact, the Second Circuit Ponzi scheme case that the defendants cited, *Eberhard v. Marcu*, 530 F.3d 122 (2d Cir. 2008), involved a broker and investment advisor whose fraudulent activities mirrored many of Madoff's. *See Eberhard v. United States*, No. 09 Civ. 110, 2010 WL 1789889, at *3-4 (S.D.N.Y. May 4, 2010) (describing Eberhard's fraudulent activities as a broker-dealer and investment advisor who churned client accounts and misappropriated millions of dollars through unauthorized withdrawals).

Accordingly, the portion of the *Motions* seeking to dismiss the complaints based on the failure to plead that the transfers were made with the actual intent to defraud are denied.

### 2.    The Trustee has failed to adequately plead subsequent transfer liability with respect to certain of the complaints.

Section 550(a)(2) of the Bankruptcy Code allows a trustee to recover an avoided transfer from "any immediate or mediate transferee of" the initial transferee. 11 U.S.C. § 550(a)(2). In many of his avoidance actions, the Trustee has sought to recover the initial transfers from subsequent transferees. Numerous subsequent transferee defendants argue that the Trustee has failed to adequately plead the subsequent transfer claims.

To plead a subsequent transfer claim, the trustee must plead that the initial transfer is avoidable, and that the defendant is a subsequent transferee of that initial transfer. Rule 9(b) of the Federal Rules of Civil Procedure governs the portion of a claim to avoid an initial intentional fraudulent transfer, *Sharp Int'l Corp. v. State Street Bank & Trust Co.* (*In re Sharp Int'l Corp.*), 403 F.3d 43, 56 (2d Cir. 2005); *Atlanta Shipping Corp., Inc. v. Chem. Bank*, 818 F.2d 240, 251 (2d Cir. 1987); *Nisselson v. Drew Indus., Inc.* (*In re White Metal Rolling & Stamping Corp.*), 222 B.R. 417, 428 (Bankr. S.D.N.Y. 1998), and Rule 8(a) governs the portion of a claim to

49

recover the subsequent transfer. *Picard v. Madoff* (*In re BLMIS*), 458 B.R. 87, 119 (Bankr.

S.D.N.Y. 2011); *Picard v. Merkin* (*In re BLMIS*), 440 B.R. 243, 269 (Bankr. S.D.N.Y. 2010);

*SIPC v. Stratton Oakmont, Inc.*, 234 B.R. 293, 317-18 (Bankr. S.D.N.Y. 1999). For the reasons

stated, the Trustee has adequately pleaded that the initial transfers were made with fraudulent

intent.

       To plead the subsequent transfer prong, the complaint must allege facts that support the

inference "that the funds at issue originated with the debtor," *Silverman v. K.E.R.U. Realty Corp.*

(*In re Allou Distribs., Inc.*), 379 B.R. 5, 30 (Bankr. E.D.N.Y. 2007); *accord Picard v. Estate of*

*Chais*, 445 B.R. at 235, and contain the "necessary vital statistics—the who, when, and how

much" of the purported transfers to establish an entity as a subsequent transferee of the funds.

*Allou Distribs.*, 379 B.R. at 32; *accord Gowan v. Amaranth LLC* (*In re Dreier LLP*), 452 B.R.

451, 464 (Bankr. S.D.N.Y. 2011). The plaintiff's burden at the pleading stage "'is not so

onerous as to require "dollar-for-dollar accounting" of "the exact funds" at issue.'" *Picard v.*

*Charles Ellerin Revocable Trust* (*In re BLMIS*), Adv. Pro. No. 10-04398, 2012 WL 892514, at

\*3 (Bankr. S.D.N.Y. Mar. 14, 2012) (quoting *Allou Distribs.*, 379 B.R. at 30 (citing *IBT Int'l,*

*Inc. v. Northern* (*In re Int'l Admin. Servs., Inc.*), 408 F.3d 689, 708 (11th Cir. 2005))).

       Becker & Poliakoff's omnibus memorandum of law mentioned only one subsequent

transfer claim filed in one complaint: the December 14, 2011 amended complaint in *Picard v.*

*RAR Entrepreneurial Fund, Ltd.*, Adv. P. No. 10-04352 (SMB) ("*RAR Am. Complaint*") (ECF

Adv. P. No. 10-04352 Doc. # 26). There, the Trustee sought to avoid and recover over $17

million in initial transfers made to defendants RAR Entrepreneurial Fund, Ltd. and Tamiami

Tower Corp. as fraudulent transfers and preferences under provisions of the Bankruptcy Code

and New York law. (*RAR Am. Complaint* at ¶¶ 2-3.) The suit also sought to recover from

Russell Oasis, Alan Potamkin, and Robert Potamkin as subsequent transferees.  (*Id*. at ¶¶ 101-106.)  The Trustee alleged that these three individual defendants are co-owners of Tamiami and limited partners of RAR.  (*Id*. at ¶¶ 10-12.)  He further alleged "[o]n information and belief, some or all of the Transfers were subsequently transferred by [Tamiami and RAR] to [the three individual defendants]."  (*Id*. at ¶ 47; *see also id*. at ¶ 103.)

The barebones allegations of subsequent transfer are insufficient.  They lack the "vital statistics," and the fact that the subsequent transferee defendants have ownership interests in the initial transferees is insufficient to plead a subsequent transfer claim.  *Dreier*, 452 B.R. at 480 (subsequent transferee claims based on such transferees' positions in the corporate structure insufficient to meet pleading standard).  Other firms also argue for dismissal of the subsequent transfer claims in cases involving their clients.  The Court has conducted a random review of the approximate 230 pleadings, and its review indicates that the subsequent transfer allegations, where made, suffer from the same deficiencies as the *RAR Am. Complaint* and must meet the same fate.  My review also indicates that some counsel filed the same brief in every adversary proceeding, and argued for the dismissal of a subsequent transfer claim where the Trustee sued only one defendant and did not assert a subsequent transfer claim.  *See Picard v. Feldman*, Adv. Pro. No. 10-04349 (SMB); *Picard v. Schur*, Adv. Pro. No. 10-04396 (SMB); *Picard v. R. Feldman*, Adv. Pro. No. 10-04560 (SMB); *Picard v. Diamond*, Adv. Pro. No. 10-04717 (SMB).  Obviously, those motions are denied.

Accordingly, the subsequent transfer count in the *RAR Am. Complaint* and similarly pleaded claims in the other complaints will be dismissed.  The Court leaves it to the parties in the first instance to determine whether this ruling requires the dismissal of the subsequent transfer claim in the specific case.  If they agree, the disposition should be incorporated into a dismissal

order.  If they cannot agree, they should arrange a conference with the Court to discuss a

procedure by which the Court can expeditiously consider the individual pleadings or an agreed

upon sample and determine whether the subsequent transfer claims warrant dismissal in

accordance with this opinion.

The Trustee's opposition merits one further comment.  Although not presented in a

formal count, the Trustee's complaints often include generic language alleging that to the extent

the funds transferred from BLMIS were for the benefit of the subsequent transferee defendant,

the latter is an initial transferee of the transfer.  Section 550(a)(1) of the Bankruptcy Code allows

the Trustee to recover an avoided transfer from "the initial transferee of such transfer or the

entity for whose benefit such transfer was made,"  11 U.S.C. § 550(a)(1), and § 550(a)(2)

permits the Trustee to recover the avoided transfer from the "immediate or mediate transferee of

such initial transferee."  "The structure of the statute separates initial transferees and

beneficiaries, on the one hand, from 'immediate or mediate transferee[s]', on the other.  The

implication is that the 'entity for whose benefit' is different from a transferee, 'immediate' or

otherwise."  *Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 895 (7th Cir. 1988);

*accord Christy v. Alexander & Alexander of New York, Inc. (In re Finley, Kumble, Wagner,*

*Heine, Underberg, Manley, Myerson & Casey)*, 130 F.3d 52, 57 (2d Cir. 1997)("because

'immediate and mediate' transferees are the subject of the following subsection (§ 550(a)(2)), we

know that the 'entity for whose benefit' phrase does not simply reference the next pair of hands;

it references entities that benefit as guarantors of the debtor, or otherwise, without ever holding

the funds.").  "The paradigm 'entity for whose benefit such transfer was made' is a guarantor or

debtor-someone who receives the benefit but not the money."  *Bonded Fin. Servs.*, 838 F.2d at

895.

The Trustee's allegations ignore these distinctions.  The defendants are either transferees or persons for whose benefit the transfers were made; they can't be both.  Furthermore, they are either subsequent transferees or initial transferees.  The complaints do not allege facts showing that the transfers were made for the benefit of any defendant; instead, they allege the initial transfers and assert, in conclusory fashion, that the subsequent transferee defendants received subsequent transfers.

As a result of the foregoing, the Trustee's subsequent transfer claims are dismissed to the extent set forth above.

### 3.   The Trustee has failed to adequately plead a claim to avoid obligations.

Bankruptcy Code § 548 and corresponding state law allow a bankruptcy trustee to avoid intentionally and constructively fraudulent obligations as well as transfers, and many of the complaints seek both forms of relief.  "Transfers" and "obligations" represent distinct concepts, and certain provisions of the Bankruptcy Code apply to fraudulent transfers but not to fraudulent obligations.  *See, e.g., In re Asia Global Crossing, Ltd.*, 333 B.R. 199, 202 (Bankr. S.D.N.Y. 2005) ("[Bankruptcy Code] § 502(d) applies to avoidable transfers but does not apply to avoidable obligations.")  Although not raised by the parties, the Bankruptcy Code § 546(e) safe harbor provision is such a provision.  By its terms, it limits a trustee's right to avoid a "transfer" but not his power to avoid fraudulent obligations.  *Lehman Bros. Holdings Inc. v. JPMorgan Chase Bank, N.A.* (*In re Lehman Bros. Holdings Inc.*), 469 B.R. 415, 444-45 (Bankr. S.D.N.Y. 2012); *Geltzer v. Mooney* (*MacMenamin's Grill Ltd.*), 450 B.R. 414, 429-30 (Bankr. S.D.N.Y. 2011).  Thus, the Trustee may seek to avoid actual and constructive fraudulent obligations under Bankruptcy Code § 548 and applicable state law to the extent permitted by 11 U.S.C. § 544(b)(1).

53

Many defendants have moved to dismiss the claims to avoid fraudulent obligations on two grounds: (1) SIPA does not allow the Trustee to avoid fraudulent obligations and (2) the Trustee failed to plead legally sufficient avoidance claims. The former argument is based on the text of SIPA § 78fff-2(c)(3). As discussed, this provision allows the Trustee to avoid transfers of customer property by creating a fiction that treats transferred customer property as property of the debtor. The defendants argue that SIPA § 78fff-2(c)(3) does not grant the Trustee the power to avoid obligations, and conclude that the SIPA trustee cannot do so.

The defendants read SIPA § 78fff-2(c)(3) in isolation and ignore its purpose and the remainder of SIPA. The SIPA trustee is "vested with the same powers and title with respect to the debtor and the property of the debtor … as a trustee in a case under title 11," SIPA § 78fff-1(a), and these powers include the ability to avoid fraudulent transfers and obligations pursuant to Bankruptcy Code § 548 and applicable state fraudulent transfer law through the authority granted under Bankruptcy Code § 544(b)(1). *See Marshall v. Picard* (*In re BLMIS*), 740 F.3d 81, 88 n. 8 (2d Cir. 2014) ("Although a SIPA liquidation is not a traditional bankruptcy, a SIPA trustee's authority to bring claims in administering a SIPA liquidation is coextensive with the powers of a Title 11 bankruptcy trustee."). As discussed earlier, the ordinary powers conferred on a bankruptcy trustee would not allow a SIPA trustee to avoid the pre-filing fraudulent (or preferential) transfer of customer property because customer property belonged to the customer and not the debtor.

SIPA § 78fff-2(c)(3) grants the SIPA trustee the additional power to avoid the transfer of customer property. It adds to the avoiding powers that the SIPA trustee obtains through the Bankruptcy Code; SIPA does not limit those powers. *See* S. REP. NO. 95-763 at 13 (1978) (SIPA

§ 78fff-2(c)(3) "preserve[s] the substance of SIPA subsection 6(c)(2)(d) which describes

transactions deemed to be voidable under SIPA.  Such transactions include those void or

voidable under the bankruptcy act and those which have the effect of granting preferential

treatment to individual customers."); *Antecedent Debt Decision*, 499 B.R. at 420 ("Thus, in

addition to the ordinary recovery of the debtor's assets for distribution to creditors of the general

estate, the Trustee in this SIPA proceeding must both recover customer property—which, for our

purposes, has primarily been transferred to other customers in the form of fictitious 'profits' as

part of Madoff Securities' efforts to perpetrate its fraud—and then distributed to customer who

have 'net equity' claims.").

The SIPA trustee does not need additional authority or Congressionally-created fictions

to avoid a fraudulent obligation incurred by the debtor.  The provisions of the Bankruptcy Code

are sufficient for that purpose, and unlike the power to avoid transfers of customer property, do

not require supplementation.  Accordingly, the Trustee has the authority through his Bankruptcy

Code powers to avoid fraudulent obligations under Bankruptcy Code §§ 544(b)(1) and 548.

Although the Trustee has the power, the claims to avoid fraudulent obligations are

inadequately pleaded.  The allegations in *RAR Am. Complaint*, the only pleading referred to by

Becker & Poliakoff,[25] are also typical of the claims asserted against the defendants represented

by other firms identified below:

---

[25]  According to the Trustee, only five complaints asserted against Becker & Poliakoff clients seek to avoid obligations:  *Picard v. The Harnick Brothers P'ship*, Adv. Pro. No. 10-05157, *Picard v. Irene Whitman 1990 Trust U/A/ DTD 4/13/90*, Adv. Pro. No. 10-05196, *Picard v. Estate of Nathan Schupak*, Adv. Pro. No. 12-01706 , *Picard v. RAR Entrepreneurial Fund, Ltd*, Adv. Pro. No. 10-04352 and *Picard v. Joseph S. Popkin Rev. Trust Dated February 9, 2006*, Adv. Pro. No. 10-04712.  (*Trustee Memo I* at 30 n. 35.)

41.    To the extent BLMIS or Madoff incurred obligations to the Defendants in connection with the Account Documents, or any statement or representations made by BLMIS or Madoff, such obligations (collectively the "Obligations") are avoidable under sections 105(a), 544(b) and 548(a) of the Bankruptcy Code, applicable provisions of [New York law], and applicable provisions of SIPA, including sections 78fff(b) and 78fff-1(b). BLMIS or Madoff incurred the Obligations as an integral part of and in furtherance of BLMIS's Ponzi scheme.

42.    To the extent BLMIS or Madoff incurred the Obligations, such Obligations were incurred with actual intent to hinder, delay, or defraud existing and/or future creditors.

43.    To the extent BLMIS or Madoff incurred the Obligations, such Obligations were incurred when BLMIS was insolvent, had unreasonably small capital, and/or was unable to pay its debts as they matured.  BLMIS was a massive Ponzi scheme, which as a matter of law was insolvent from its inception and, therefore, never capable of fulfilling its obligations to its creditors.

*RAR Am. Complaint* at ¶¶ 41-43.

These allegations fail to identify any specific obligation to be avoided beyond a reference to those incurred "in connection with" the Account Documents or statements or misrepresentations made by BLMIS or Madoff.[26]  The *RAR Am. Complaint*, at paragraph 39, defines the Account Documents to include the "Customer Agreement," the "Option Agreement" and/or "Trading Authorization Limited to Purchases and Sales of Securities and Options" in addition to the "periodic customer statements, confirmations and other communications made by BLMIS or Madoff and sent to the Defendants."  Obligations arising "in connection with" the Account Documents or statements by BLMIS or Madoff encompass every debt that BLMIS might owe; but for the Account Documents, the defendants would not have invested with

---

[26]    Judge Rakoff has concluded that the account statements were invalid and entirely unenforceable, and did not give rise to binding obligations under state law.  *Antecedent Debt Decision*, 499 B.R. at 421 n. 4.

BLMIS.  Moreover, victims of BLMIS' fraud and parties to the contracts that BLMIS breached

may have claims against BLMIS even if those claims only lie against the general estate.  Finally,

the Trustee's apparent premise, that the victims of a Ponzi scheme hold avoidable obligations

because the obligations were incurred in the course of a Ponzi scheme, makes no sense.

As a consequence, the intentional fraudulent obligation claims do not satisfy FED. R. CIV.

P. 9(b), *cf. Buchwald Capital Advisors LLC v. JP Morgan Chase Bank, N.A.*, (*In re M. Fabrikant

& Sons, Inc.*), 541 F. App'x. 55, 57-58 (2d Cir. 2013) (affirming dismissal of actual fraudulent

*transfer* claims under Rule 9(b) based upon the plaintiff's failure to identify the "dates, amounts,

and other relevant circumstances of the particular transfers"), and the constructive fraudulent

obligation claims do not meet the requirements of Rule 8(a) because they fail to "'give the

defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atl.

Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957));

*accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  The *Motions* to dismiss the claims seeking

to avoid fraudulent obligations are granted with respect to the five adversary proceedings listed

in an earlier footnote in which Becker & Poliakoff represents the moving defendants.

Other counsel made the same motion on behalf of their clients in the following adversary

proceedings:

| Law Firm | Adv. Pro. No. | Case Name |
|----------|---------------|-----------|
| Milberg LLP | 10-05401 | *Picard v. Estate of Eleanor Myers a/k/a Eleanor Block a/k/a Lee Block, et al.* |
| Dentons LLP | 10-04861 | *Picard v. Harold J. Hein* |
| Dentons LLP | 10-04921 | *Picard v. Stanley T. Miller* |
| Dentons LLP | 10-04672 | *Picard v. Sidney Cole* |
| Dentons LLP | 10-04415 | *Picard v. Barbara J. Berdon* |
| Dentons LLP | 10-05209 | *Picard v. Lapin Children LLC* |
| Dentons LLP | 10-04332 | *Picard v. Barry Weisfeld* |

| Dentons LLP | 10-04401 | *Picard v. Rose Gindel Trust, et al.* |
|---|---|---|
| Dentons LLP | 10-05085 | *Picard v. Eugene J. Ribakoff 2006 Trust, et al.* |
| Dentons LLP | 10-05424 | *Picard v. The Frederia Ripley French Rev. Trust, et al.* |
| Dentons LLP | 10-05224 | *Picard v. David R. Markin, et al.* |
| Dentons LLP | 10-04925 | *Picard v. Alvin Gindel Rev. Trust, et al.* |
| Dentons LLP | 10-05384 | *Picard v. Neil Reger Profit Sharing Keogh, et al.* |
| Milberg LLP | 10-04966 | *Picard v. Onesco International, Ltd., et al.* |
| Milberg LLP | 10-04951 | *Picard v. Harold A. Thau* |
| Milberg LLP | 10-04946 | *Picard v. Stephen R. Goldenberg* |
| Milberg LLP | 10-05089 | *Picard v. John Denver Concerts, Inc., et al.* |
| Milberg LLP | 10-04335 | *Picard v. Aspen Fine Arts Co., et al.* |
| Milberg LLP | 10-04978 | *Picard v. Estate of Ira S. Rosenberg, et al.* |
| Milberg LLP | 10-04725 | *Picard v. Ruth E. Goldstein* |
| Milberg LLP | 10-05069 | *Picard v. Potamkin Family Foundation* |
| Milberg LLP | 10-04576 | *Picard v. Norton A. Eisenberg* |
| Milberg LLP | 10-04741 | *Picard v. William M. Woessner Family Trust, et al.* |
| Milberg LLP | 10-04724 | *Picard v. P. Charles Gabriele* |
| Milberg LLP | 10-04582 | *Picard v. Gerald Blumenthal* |
| Milberg LLP | 10-05136 | *Picard v. Richard Roth* |
| Seeger Weiss LLP | 10-04540 | *Picard v. Jonathan Sobin* |
| Pryor Cashman LLP | 10-05194 | *Picard v. Bruce D. Pergament, et al.* |
| Pryor Cashman LLP | 10-04341 | *Picard v. James P. Marden, et al.* |
| Pryor Cashman LLP | 10-04348 | *Picard v. Marden Family Limited Partnership, et al.* |
| Pryor Cashman LLP | 10-05239 | *Picard v. Robert Fried, et al.* |
| Pryor Cashman LLP | 10-05439 | *Picard v. Avram J. Goldberg, et al.* |
| Pryor Cashman LLP | 10-05118 | *Picard v. Charlotte M. Marden, et al.* |
| Pryor Cashman LLP | 10-04575 | *Picard v. Boslow Family Limited Partnership, et al.* |
| Pryor Cashman LLP | 10-05397 | *Picard v. Oakdale Foundation Inc., et al.* |
| Pryor Cashman LLP | 10-04565 | *Picard v. Murray & Irene Pergament Foundation, Inc., et al.* |
| Arent Fox LLP | 10-04998 | *Picard v. Estate of Hermen Greenberg, et al.* |

The obligation avoidance claims asserted in these adversary proceedings are also dismissed for the same reasons, but this ruling applies only to the defendants represented by the corresponding defense counsel and not to any other defendant in the adversary proceeding.

**4.     The Complaint fails to allege sufficient facts regarding inter-account transfers.**

In *SIPC v. BLMIS*, 522 B.R. 41 (Bankr. S.D.N.Y. 2014) ("*Inter-Account Transfer Decision*"), the Court determined the correct method for calculating the net equity where a customer account had received a transfer from another BLMIS account.  First, the Trustee must compute the amount of net equity in the transferor account on the date of the transfer under the Net Investment Method approved by the Second Circuit in the *Net Equity Decision*.  Second, the Trustee must credit the transferee with the amount of the transfer up to the amount of net equity in the transferor account.  *See Inter-Account Transfer Decision*, 522 B.R. at 62.  The Court overruled numerous objections including that the Inter-Account Method violated the two year statute of limitations for fraudulent transfers, *id.* at 53-54, the transferees of the inter-account transfers were actually subsequent transferees, *id.* at 55-56, and the Inter-Account Method improperly combined accounts and violated the federal securities laws, *id.* at 56, and ERISA.  *Id.* at 58-59.

Many of the defendants raise the same arguments in their motions to dismiss.  Although the *Inter-Account Transfer Decision* dealt with the computation of net equity under SIPA and the Trustee is seeking in these adversary proceedings to recover fictitious profits, I reject these arguments for the same reasons.  As discussed previously, the computation of fictitious profits that a defendant received through an inter-account transfer is the same for purposes of calculating the customer's net equity claim or his clawback exposure.  If the transferor had

negative net equity (or less positive equity than the amount of the transfer), the transferee did not

receive credit to the extent of the negative net equity.

The one issue raised by the defendants that was not previously addressed concerns

whether the Trustee has sufficiently pleaded the inter-account transfer.  In particular, the exhibits

attached to the complaints state the amount of the inter-account transfer (often negative) on the

date of each transfer without alleging how the Trustee computed the amount.  The complaints

also do not allege who owned the transferor account or the relationship between the transferor

and the transferee.  (*See, e.g.*, *Memorandum of Law in Support of Defendants' Motion to Dismiss

the Trustee's Complaint*, dated Jan. 17, 2014, at 20 (ECF Adv. P. No. 10-04655 Doc. # 32.)

The defendants' arguments lack merit.  The complaints give the defendants fair notice of

their alleged clawback exposure and the specific transfers that the Trustee is challenging during

the Two-Year Period.  Although the complaints do not allege how the Trustee computed the

amount of the inter-account transfer, the exhibits state what the Trustee contends that amount

was, and hence, provide adequate notice of the Trustee's claims to the defendants.  The

defendants can test those calculations through discovery.  The relevance of the identity of the

transferor and its relationship to the transferee-customer is not apparent, but the defendants can

certainly learn this information through pre-trial discovery.

**E.    Other Arguments**

**1.    The Trustee improperly combines accounts.**

SIPA provides advances up to $500,000 per customer to promptly satisfy, in whole or

part, the customer's net equity claim.  SIPA § 78fff-3(a) ("In order to provide for prompt

payment and satisfaction of net equity claims of customers of the debtor, SIPC shall advance to

the trustee such moneys, not to exceed $500,000 for each customer, as may be required to pay or

otherwise satisfy claims for the amount by which the net equity of each customer exceeds his

ratable share of customer property . . . ."). "[A] customer who holds accounts with the debtor in

separate capacities shall be deemed to be a different customer in each capacity." SIPA § 78fff-

3(a)(2). The SIPC Rules implementing SIPA state that "[a]ccounts held by a customer in

different capacities, as specified by these rules, shall be deemed to be accounts of 'separate'

customers." 17 C.F.R. § 300.100(b). Accounts held by corporations, partnerships or

unincorporated associations are treated as separate from the partners or owners of the entity, *id.* §

300.103, and trust accounts are separate customers distinct from the trustee, settlor or beneficiary

of the trust. *Id.* § 300.104.[27]

Many defendants contend that the complaints improperly combine accounts in violation

of SIPA § 78fff-3(a)(2), the SIPC Rules and/or applicable pleading rules. (*E.g., B&P Memo* at

35-36 (citing the complaint in *Picard v. Gertrude Alpern Revocable Trust* (the "*Alpern*

*Complaint*") (ECF Adv. P. No. 10-04327, Doc. # 1); *Memorandum of Law in Support of*

*Defendants' Motion to Dismiss the Amended Complaint*, dated Mar. 22, 2013, at 21-23 (ECF

Adv. P. No. 10-04401 Doc. # 24).) The *Alpern Complaint* referred to by Becker & Poliakoff is

typical of other multi-defendant complaints. Although it does aggregate the transfers received by

the several defendants in some allegations, (*e.g., Alpern Complaint* at ¶¶ 2, 46), it annexes

Exhibits B-1 and B-2 which separately identify every transfer to each of the initial transferees,

Gertrude E. Alpern, as Trustee, the Paul Alpern Residuary Trust and the Roberta Schwartz Trust,

by date and amount. In addition, the exhibits also show that Gertrude E. Alpern, as Trustee,

---

[27]     The SIPC rules regarding the separateness of accounts do not apply if the entity "existed for a purpose
other than primarily to obtain or increase protection under [SIPA]." *Id.* §§ 300.103-.104(a).

withdrew a total of $170,232 in net profits during the Two-Year Period on the dates indicated. (*Alpern Complaint*, Ex. B-1.)  During the same period, the Paul Alpern Residuary Trust withdrew $13,266, (*id.*, Ex. B-1), and the Roberta Schwartz Trust withdrew $409,702, (*id.*, Ex. B-2), all net profits, on the dates indicated.

Each complaint attaches comparable exhibits that identify the initial transfers at issue as to each account and the withdrawals during the Two-Year Period.  The complaints treat the accounts separately and provide adequate notice of the dates and amounts of the initial transfers that form the subject of the litigation.  Finally, because the Trustee does not combine accounts, the defendants' argument that the Trustee violated SIPA § 78fff-3 or 17 C.F.R. §§ 300.100(b), 300.104(b), (*see B&P Memo*, at 35-36), lacks merit.

The initial transferee in *Picard v. Marden*, Adv. P. No. 10-04348 makes a variation of this argument based on facts unique to that proceeding.  According to the Complaint, dated Nov. 12, 2010 (ECF Adv. P. No. 10-04348 Doc. # 1), the dispute involves a single account, BLMIS Account No. 1M0086 (the "Account").  From April 23, 1996 when the Account was opened until around July 2004, the Account was held in the name of "Bernard A. Marden Revocable Trust." (Complaint ¶ 11(a).)  The Account was thereafter held in the name of "Marden Family LP."  (*Id.* ¶ 11(b).)  Exhibit B attached to the complaint shows that as of July 2, 2004, the balance in the Account computed under the Net Investment Method was negative $36,158,315.  (*Id,* Ex. B, at 6 of 10.)  Following the last withdrawal on December 5, 2008, the negative balance increased to $68,677,612.  (*Id.*, Ex. B, at 10 of 10.)  Finally, during the Two-Year Period, $40,481,500 in fictitious profits were withdrawn.  (*Id.*, Ex. B, at 8-10 of 10.)

When an account holder "transferred" fictitious profits, the transferee account received zero credit but the "transfer" did not reduce the balance in the transferee account. *See Inter-Account Transfer Decision*, 522 B.R. at 48. Thus, if the transferee account had a $100,000 balance and received a "transfer" consisting entirely of fictitious profits, the balance after the "transfer" remained at $100,000. When the Account changed names, however, the renamed Account retained the approximate $36 million of negative equity, a number that nearly doubled by the time the Ponzi scheme collapsed.

The Marden defendants argued that there were really two accounts, and contend that SIPA required the Trustee to treat each account separately because they were held in different capacities. In addition, the Trustee should have treated the name change as an inter-account transfer of the fictitious profits from the Bernard A. Marden Revocable Trust account, and "zeroed out" the negative starting balance in the Marden Family LP account. Had he done so, the $36,158,315 in beginning negative net equity would have disappeared, and the Marden defendants' clawback exposure would have been reduced from $40,481,500 during the Two-Year Period to slightly more than $32 million. (*See Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended Complaint*, dated Mar. 22, 2013 ("*Marden Memo*"), at 29-32 (ECF Adv. P. No. 10-04348 Doc. # 25-1).)[28]

Unlike the typical inter-account transfer scenario, the dispute with the Marden defendants involves only one account, and there was never a transfer of profits, fictitious or otherwise,

---

[28]    According to the Marden defendants, the clawback exposure during the Two-Year Period would drop to $17.95 million. (*Marden Memo* at 30-31.) The reason for the discrepancy is unclear. The increase in negative balance between the Bernard A. Marden Revocable Trust account on July 2, 2004 and the final balance in the Marden Family LP account reflects all additions to the account during the period that it was held in the name of Marden Family LP. For present purposes, the discrepancy is immaterial because the methodology that the Marden defendants challenge is the same.

between two different accounts held by two different entities.  Furthermore, the Trustee's

treatment of the Account as a single account for purposes of computing the Marden Family LP's

clawback exposure does not implicate SIPAs "separate capacities" rules.  The rules were

designed to expand the availability of SIPC insurance to satisfy shortfalls in the recovery of net

equity.  The Bernard A. Marden Revocable Trust and Marden Family LP "accounts" had

negative net equity and were ineligible for SIPC insurance.

**2.      The Trustee's disallowance of unidentified related claims is inconsistent with SIPA.**

Section 502(d) of the Bankruptcy Code states that "the court shall disallow *any claim of*

*any entity* from which property is recoverable under" the avoidance provisions of the Bankruptcy

Code (emphasis added).  In *SIPC v. BLMIS*, 513 B.R. 437 (S.D.N.Y. 2014), the District Court

withdrew the reference and denied motions to dismiss, ruling that § 502(d) applied in SIPA

proceedings and authorized the disallowance of a customer claim asserted by a transferee who

received a voidable transfer and failed to return it.  *Id.* at 445-46.  The complaint that Judge

Rakoff discussed for illustrative purposes, *Picard v. Cardinal Mgmt., Inc.*, alleged that the

defendant, a net loser, had failed to act in good faith and sought to avoid and recover all transfers

received from BLMIS.  It also included a count seeking to disallow the defendant's customer

claims under 11 U.S.C. § 502(d).  *Id.* at 440.

The moving defendants are good faith transferees from whom the Trustee is seeking to

recover only fictitious profits.  According to some moving defendants, they held multiple

accounts; one account may have received fictitious profits and is liable as fraudulent transferee

but another account suffered a loss and is entitled to assert a customer claim.  They argue that the

Trustee is attempting to combine the net winner and net loser accounts and use § 502(d) to avoid

making a distribution on the latter account because of the fraudulent transfers received by the former account. They also contend that the District Court did not address this situation, and moreover, disallowing a valid customer claim because another account received fictitious profits violates the "separate capacities," SIPA § 78fff-3(a)(2), and the accompanying rules discussed in the previous section.

Bankruptcy Code § 502(d) and SIPA § 78fff-3(a)(2) are facially consistent. Section 502(d) requires the Court to disallow the claims of an entity if the *same* entity received an avoidable transfer unless the entity repays the transfer. If the creditor that filed the claim is a different "entity" than the creditor that received the voidable transfer, § 502(d) does not apply. *See, e.g., In re Saint Catherine Hosp. of Pennsylvania, LLC*, 507 B.R. 814 (Bankr. M.D. Pa. 2014) (creditor who acquired claim against the debtor after the creditor's own bankruptcy was not the same entity for purposes of § 502(d) as the creditor's bankruptcy estate). Similarly, if the customer owns an account in his individual name and another account as a trustee, the customers are different entities that own the accounts in separate capacities for purposes of SIPA § 78fff-3(a)(2). Conversely, if a customer holds two or more accounts in the same capacity, the customer does not hold the accounts in separate capacities under SIPA and the two accounts are held by the same entity for purposes of 11 U.S.C. § 502(d).

Accordingly, the motions to dismiss the § 502(d) claims on the ground that Bankruptcy Code § 502(d) is inconsistent with SIPA § 78fff-3(a)(2) as a matter of law are denied.

### 3.    Applicable non-bankruptcy law protects transfers and distributions from defendants' accounts that are held in the name of an irrevocable trust.

New York Civil Practice Law & Rules ("CPLR") § 5205 exempts certain trust property and income from *judgment execution.* With some exceptions, CPLR § 5205(c)(1) provides that

"all property while held in trust for a judgment debtor, where the trust has been created by, or the

fund so held in trust has proceeded from, a person other than the judgment debtor, is exempt

from application to the satisfaction of a money judgment," and § 5205(c)(2) states that certain

trusts and plans that qualify under the Internal Revenue Code, including IRAs, shall be

considered a trust created by someone other than the judgment debtor.  CPLR § 5205(c)(5)

provides a limited exception:

> Additions to an asset described in paragraph two of this subdivision shall
> not be exempt from application to the satisfaction of a money judgment if (i)
> made after the date that is ninety days before the interposition of the claim on
> which such judgment was entered, or (ii) deemed to be fraudulent conveyances
> under article ten of the debtor and creditor law.

The Trustee seeks to avoid and recover fraudulent transfers made to several irrevocable

trusts, *e.g., Picard v. Trust For the Benefit of Ryan Tavlin*, No. 10-05232 (SMB) (Bankr.

S.D.N.Y. Dec. 6, 2010) (ECF Adv. P. No. 10-05232 Doc. # 1)), and certain of those defendants

have moved to dismiss.  They argue that the challenged transfers to and distributions from the

trust accounts are protected under CPLR § 5205(c).  The District Court has already ruled that

CPLR § 5205(c) exemption from satisfaction of a judgment does not apply because fraudulently

transferred property is not exempt under CPLR § 5205(c)(5)(ii).  *Greiff*, 476 B.R. at 729 n. 13.

The moving defendants respond that the exception only applies to fraudulent transfers under

New York state law, and the Trustee is limited to seeking avoidance under Bankruptcy Code §

548(a)(1)(A).

The motion to dismiss on this ground is denied.  First, CPLR § 5205 exempts certain trust

property from judgment execution, but the defendants have not cited any authority in support of

their argument that it invalidates the plaintiff's cause of action.  Second, the exemption does not

apply to all trusts.  Third, CPLR § 5205 addresses the situation where the judgment debtor and

the trust are different entities, and the plaintiff seeks to satisfy its judgment against the judgment

debtor from the trust property or income.  Here, the trust or retirement account received the

fraudulent transfer.  Fourth, even if the principal is exempt, the income earned by the trust may

not be fully exempt from execution by a judgment creditor.  *See* CPLR 5205(d)(1).

**4.    The Trustee's actions against charitable trusts violate Free Exercise of religion.**

Several defendants are charitable and/or religious organizations, and argue that the

Trustee's clawback actions violate the Religious Freedom Restoration Act of 1993 ("RFRA"), 42

U.S.C. §§ 2000bb, *et seq.*, and the Religious Liberty and Charitable Donation Protection Act of

1998 ("RLCDPA"), P.L. 105-183.  (*B&P Memo* at 44-45; *Memorandum of Law in Support of*

*Defendants' Motion to Dismiss the Amended Complaint*, dated Mar. 22, 2013, at 30-32 (ECF

Adv. P. No. 10-05224, Doc. # 20).)

RFRA provides that the "Government shall not substantially burden a person's exercise

of religion even if the burden results from a rule of general applicability," unless it can show that

burden on a person is in furtherance of a compelling governmental interest and the government

has used the least restrictive means of furthering that compelling interest.  *Id.* at § 2000bb-1.

RFRA imposes a burden shifting test that requires the plaintiff to show a substantial burden on

the exercise of religion, and if the burden is met, requires the government to show that the

burden is justified by a compelling governmental interest.  *Listecki v. Official Comm. of*

*Unsecured Creditors*, 780 F.3d 731, 736 (7th Cir. 2015).  Because the RFRA imposes the burden

on the government, there is substantial doubt that it applies in litigation between private parties.

*Rweyemamu v. Cote,* 520 F.3d 198, 203 n. 2 (2d Cir. 2008) ("[W]e do not understand how

[RFRA] can apply to a suit between private parties, regardless of whether the government is

67

capable of enforcing the statute at issue."); *Hankins v. Lyght*, 441 F.3d 96, 114-15 (2d Cir. 2006)

("Where, as here, the government is not a party, it cannot 'go[ ] forward' with any evidence.  In

my view, this provision strongly suggests that Congress did not intend RFRA to apply in suits

between private parties.") (footnote omitted) (Sotomayor, J., dissenting).[29]

The defendants have failed to demonstrate a violation of the RFRA.  First, these

adversary proceedings are between private parties.  The Trustee brought these proceedings

pursuant to SIPA § 78fff-2(c)(3) and only a SIPA trustee has the authority to do so.  For the

reasons discussed, the Trustee is not a governmental or quasi-governmental actor, and hence, the

RFRA does not appear to apply.

Second, the defendants have failed to show that the Trustee's clawback actions impose a

substantial burden on the exercise of religion.  The defendants invested with BLMIS, and

received fictitious profits in the form of money invested by other customers.  The defendants'

transactions with BLMIS had nothing to do with the exercise of religion.   Furthermore, while a

money judgment may pose a monetary burden on them, it does not impose a burden much less a

substantial burden on their ability to exercise their religious rights.  Indeed, their argument would

require exoneration from all forms of liability resulting from breaches of tort and contract law.

---

[29]     In *Hankins,* the Court of Appeals held, over then-Circuit Judge Sotomayor's dissent, that the RFRA applied
to an age discrimination lawsuit between private parties because the government, in the guise of the EEOC, could
have brought the same lawsuit, "and the substance of the ADEA's prohibitions cannot change depending on whether
it is enforced by the EEOC or an aggrieved private party."  *Id.* at 103.  In *Rweyemamu*, the Second Circuit
questioned *Hankins* majority's conclusion, *Rweyemamu*, 520 F.3d at 203 (expressing "doubts about *Hankins*'s
determination that RFRA applies to actions between private parties when the offending federal statute is enforceable
by a government agency. . . ."), but found it unnecessary to "wrestle with the RFRA's applicability" because the
defendants had waived the RFRA defense.  *Id.* at 204.

The defendants' argument that the Trustee's clawback actions violate RLCDPA is also

meritless.  Codified in Bankruptcy Code § 548, RLCDPA provides that subject to certain

limitations:

> A transfer of a charitable contribution to a qualified religious or charitable entity
> or organization shall not be considered to be a transfer covered under paragraph
> (1)(B). . . .

11 U.S.C. § 548(a)(2).  The amendment prevents a trustee from challenging *good faith* charitable

gifts as *constructive* fraudulent transfers.  5 ALAN N. RESNICK & HENRY J. SOMMER, COLLIER ON

BANKRUPTCY ¶ 548.09[6], at 548-101 (16th ed. 2014) ¶ 548.09[6], at 548-101.  The defense is

available only to a qualified religious organization that receives a charitable contribution from an

individual debtor.  11 U.S.C. §§ 548(d)(3), (4).

Bankruptcy Code § 548(a)(2) is inapplicable on its face.  First, it does not apply to

intentional fraudulent transfer claims, and these are the only avoidance claims that the Trustee

can pursue against these defendants in light of the Second Circuit's decision in *Ida Fishman*.

Second, the Trustee is not seeking to recover charitable contributions.  Third, the exemption only

applies to charitable contributions made by a natural person, and BLMIS was not a natural

person.

The defendants also argue that the Trustee recognized that his complaints against

charitable organizations violated the RFRA and the principles underlying the RLCDPA when he

entered into a "sweetheart settlement" with the heirs of Norman Levy pursuant to which he did

not seek to recover amounts transferred to the family's charitable foundation.  (*B&P Memo* at 45;

*Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended Complaint*,

dated Mar. 22, 2013, at 32 (ECF Adv. P. No. 10-05224, Doc. # 20).)  The contention grossly

distorts the record and amounts to irresponsible advocacy.  The Trustee's *Motion for Entry of*

*Order Pursuant to Section 105(a) of the Bankruptcy Code and Rules 2002 and 9019 of the*

*Federal Rules of Bankruptcy Procedure Approving an Agreement by and Among the Trustee and*

*Jeanne Levy-Church and Francis N. Levy*, dated Jan. 27, 2010 (ECF Doc. # 1833), which the

moving defendants cite, stated that he was not pursuing a judgment against the Levys' charitable

Foundation because the Foundation had no remaining assets and was judgment proof.  In a

footnote, the Trustee indicated that he reserved the right "to engage in discussions with the

charities that received money from the Foundation about returning to the Trustee the amounts

they received that constitute customer property."  *Id.* at ¶ 12 n. 5.  The Trustee did not recognize

that his complaint against the Levys violated the RFRA or the RLCDPA.

Accordingly, the motions to dismiss based on the RFRA and RLCDPA are denied.

**5.    The complaint improperly relies on (a) transactions between the defendants and third party brokers other than BLMIS; and (b) withdrawal payments made to a customer by non-BLMIS brokers and paid from a non-BLMIS account.**

The defendants represented by Bernfeld, Dematteo & Bernfeld, LLP in eleven adversary

proceedings (*see* 10-04349; 10-04394; 10-04396; 10-04408; 10-04468; 10-04560; 10-04561; 10-04717; 10-05094; 10-05231; 10-04361) moved to dismiss contending that although BLMIS was

not formed until December 2001, the Trustee has included the deposits to and withdrawals from

the pre-BLMIS entity in computing the amount of fictitious profits that each defendant received.

This argument requires consideration of facts outside of the four corners of the complaints, and is

improperly interposed on a motion to dismiss pursuant to Rule 12(b)(6).

In addition, this Court rejected the argument as a factual matter in the *Inter-Account*

*Transfer Decision*, 522 B.R. at 60.  Prior to January 2001, Madoff operated BLMIS as a sole

proprietorship, and in January 2001, BLMIS changed to a limited liability company.  The forms

Madoff submitted to SIPC at the time stated that BLMIS was a successor to all of the assets and liabilities of the predecessor business and the transfer would not result in any change in ownership or control.  Thus, nothing changed.  Furthermore, the fictitious profits that comprised their accounts when Madoff operated as a sole proprietorship were still fictitious profits in their accounts when Madoff operated as BLMIS LLC.  Accordingly, the motions to dismiss on this ground are denied.

### 6.     The Trustee's complaints violate New York public policy.

The defendants represented by Becker & Poliakoff argue that the Trustee's actions violate the New York public policy regarding commercial certainty and finality, primarily relying on *Banque Worms v. BankAmerica Int'l*, 570 N.E.2d 189 (N.Y 1991) and *Commodities Future Trading Comm'n v. Walsh*, 951 N.E.2d 369 (N.Y. 2011) and suggesting that any other rule would lead to chaos.  (*B&P Memo* at 28-30.)  The Court rejected a similar argument in the *Inter-Account Transfer Decision*, 522 B.R. at 56-58, and does again for the same reasons.

In addition, federal and state laws include fraudulent transfer provisions.  In particular, the Bankruptcy Code and SIPA provide for the recovery of fraudulent transfers, and expectations of certainty and finality are tempered by the knowledge that transactions may be avoided and the transfers recovered.  The public policies of the State of New York and the United States condemn fraudulent transfers, and do not give commercial transactions a free pass.

The defendants also quote from *Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d 329, 336 (2d Cir. 2011) that "'certainty and predictability are at a premium' in the area of law governing securities transactions."  (*B&P Memo* at 30.)  *Enron* concerned the interpretation of 11 U.S.C. § 546(e).  Construing the same provision in *Ida Fishman*, the Court of

71

Appeals stated that in enacting the Bankruptcy Code, "Congress struck careful balances between the need for an equitable result for the debtor and its creditors, and the need for finality," and the need for finality was reflected in the two year reach back period granted the Trustee to avoid and recover intentional, fraudulent securities-related transfers through 11 U.S.C. §§ 546(e) and 548(a)(1)(A).  *Ida Fishman*, 773 F.3d at 423.  Here, the Trustee seeks to recover intentional fraudulent transfers made during the Two-Year Period consistent with that policy.

## CONCLUSION

The *Motions* are granted in part and denied in part.  The Court has considered the defendants' remaining arguments and concludes that they lack merit.  The parties are directed to settle appropriate orders or submit consensual orders consistent with this decision in the adversary proceedings that it covers.

Dated:        New York, New York
              June 2, 2015

                              /s/ *Stuart M. Bernstein*
                              STUART M. BERNSTEIN
                              United States Bankruptcy Judge

**Appendix**

| | Case Name | Adv. Pro. No. | Defense Counsel |
|---|---|---|---|
| 1 | *Picard v. R. Roman* | 10-04292 | Becker & Poliakoff, LLP[30] |
| 2 | *Picard v. J. Roman* | 10-04302 | Becker & Poliakoff, LLP |
| 3 | *Picard v. David Shapiro Nominee 4, et al.* | 10-04305 | Becker & Poliakoff, LLP |
| 4 | *Picard v. Tiletnick* | 10-04306 | Becker & Poliakoff, LLP |
| 5 | *Picard v. David Shapiro Nominee 3, et al.* | 10-04314 | Becker & Poliakoff, LLP |
| 6 | *Picard v. Barbanel, et al.* | 10-04321 | Becker & Poliakoff, LLP |
| 7 | *Picard v. Roth, et al.* | 10-04324 | Becker & Poliakoff, LLP |
| 8 | *Picard v. David Shapiro Nominee 2, et al.* | 10-04325 | Becker & Poliakoff, LLP |
| 9 | *Picard v. Gertrude E. Alpern Revocable Trust, et al.* | 10-04327 | Becker & Poliakoff, LLP[31] |
| 10 | *Picard v. David Shapiro Nominee, et al.* | 10-04328 | Becker & Poliakoff, LLP |
| 11 | *Picard v. Sirotkin* | 10-04344 | Becker & Poliakoff, LLP |
| 12 | *Picard v. Sage Assocs., et al.* | 10-04362 | Becker & Poliakoff, LLP[32] |
| 13 | *Picard v. Heller* | 10-04367 | Becker & Poliakoff, LLP |
| 14 | *Picard v. Yaffe* | 10-04380 | Becker & Poliakoff, LLP |
| 15 | *Picard v. Abel* | 10-04381 | Becker & Poliakoff, LLP |
| 16 | *Picard v. Fern C. Palmer Revocable Trust DTD 12/31/91, as amended, et al.* | 10-04397 | Becker & Poliakoff, LLP |
| 17 | *Picard v. Sage Realty, et al.* | 10-04400 | Becker & Poliakoff, LLP[33] |

---

[30]     Becker & Poliakoff, LLP
45 Broadway
New York, NY 10006

Helen Davis Chaitman, Esq.
Peter W. Smith, Esq.
Julie Gorchkova, Esq.
        Of Counsel

[31]     In this adversary proceeding, Becker & Poliakoff, LLP represents defendants Roberta Schwartz Trust; Jonathan Schwartz, as beneficiary of the Gertrude E. Alpern Revocable Trust; and Roberta Schwartz, as beneficiary of the Gertrude E. Alpern Revocable Trust, as settlor and beneficiary of the Roberta Schwartz Trust, and in her capacity as trustee of the Roberta Schwartz Trust.

[32]     It is unclear whether Becker & Poliakoff, LLP represents all defendants in this adversary proceeding as they allege in the exhibit attached to the *B&P Motions*.  The firm replaced a prior firm as defense counsel, but did not include defendant Lillian M. Sage in the stipulation substituting attorney.  (*See Substitution of Attorney*, dated Mar. 14, 2013 (ECF Adv. Pro. No. 10-04362 Doc. # 22).)

| | **Case Name** | **Adv. Pro. No.** | **Defense Counsel** |
|---|---|---|---|
| 18 | *Picard v. Triangle Props. #39, et al.* | 10-04406 | Becker & Poliakoff, LLP |
| 19 | *Picard v. Rechler* | 10-04412 | Becker & Poliakoff, LLP |
| 20 | *Picard v. Jaffe* | 10-04425 | Becker & Poliakoff, LLP |
| 21 | *Picard v. Kamenstein, et al.* | 10-04469 | Becker & Poliakoff, LLP |
| 22 | *Picard v. Roger Rechler Revocable Trust, et al.* | 10-04474 | Becker & Poliakoff, LLP |
| 23 | *Picard v. Robbins* | 10-04503 | Becker & Poliakoff, LLP |
| 24 | *Picard v. Ferber* | 10-04562 | Becker & Poliakoff, LLP |
| 25 | *Picard v. The Whitman P'ship, et al.* | 10-04610 | Becker & Poliakoff, LLP |
| 26 | *Picard v. Benjamin* | 10-04621 | Becker & Poliakoff, LLP |
| 27 | *Picard v. Dusek* | 10-04644 | Becker & Poliakoff, LLP |
| 28 | *Picard v. Gross, et al.* | 10-04667 | Becker & Poliakoff, LLP |
| 29 | *Picard v. Timothy Shawn Teufel and Valerie Ann Teufel Family Trust U/T/D/ 5/24/95, et al.* | 10-04668 | Becker & Poliakoff, LLP |
| 30 | *Picard v. Chalek Assocs. LLC* | 10-04680 | Becker & Poliakoff, LLP |
| 31 | *Picard v. Joseph S. Popkin Revocable Trust Dated February 9, 2006, a Florida Trust, et al.* | 10-04712 | Becker & Poliakoff, LLP[34] |
| 32 | *Picard v. Hirsch, et al.* | 10-04740 | Becker & Poliakoff, LLP |
| 33 | *Picard v. Samdia Family L.P., a Delaware P'ship, et al.* | 10-04750 | Becker & Poliakoff, LLP |
| 34 | *Picard v. Kuntzman Family LLC, et al.* | 10-04752 | Becker & Poliakoff, LLP |
| 35 | *Picard v. Ginsburg* | 10-04753 | Becker & Poliakoff, LLP |
| 36 | *Picard v. Estate of Irene Schwartz, et al.* | 10-04781 | Becker & Poliakoff, LLP |
| 37 | *Picard v. Michalove* | 10-04786 | Becker & Poliakoff, LLP |
| 38 | *Picard v. The Estelle Harwood Family Ltd. P'ship, et al.* | 10-04803 | Becker & Poliakoff, LLP |
| 39 | *Picard v. Kohl, et al.* | 10-04806 | Becker & Poliakoff, LLP |
| 40 | *Picard v. Gordon* | 10-04809 | Becker & Poliakoff, LLP |
| 41 | *Picard v. Harwood* | 10-04818 | Becker & Poliakoff, LLP |
| 42 | *Picard v. DiFazio, et al.* | 10-04823 | Becker & Poliakoff, LLP |
| 43 | *Picard v. Estate of Boyer Palmer, et al.* | 10-04826 | Becker & Poliakoff, LLP |

---

[33]    It is unclear whether Becker & Poliakoff, LLP represents all defendants in this adversary proceeding as they allege in the exhibit attached to the *B&P Motions*. The firm replaced a prior firm as defense counsel, but did not include defendant Lillian M. Sage in the stipulation substituting attorney. (*See Substitution of Attorney*, dated Mar. 14, 2013 (ECF Adv. Pro. No. 10-04400 Doc. # 22).)

[34]    In this adversary proceeding, Becker & Poliakoff, LLP represents defendant Dara N. Simons

| | Case Name | Adv. Pro. No. | Defense Counsel |
|---|---|---|---|
| 44 | *Picard v. Ehrlich, et al.* | 10-04837 | Becker & Poliakoff, LLP |
| 45 | *Picard v. Estate of Steven I. Harnick* | 10-04867 | Becker & Poliakoff, LLP |
| 46 | *Picard v. Andelman, et al.* | 10-04884 | Becker & Poliakoff, LLP |
| 47 | *Picard v. Gordon* | 10-04914 | Becker & Poliakoff, LLP |
| 48 | *Picard v. Castelli* | 10-04956 | Becker & Poliakoff, LLP |
| 49 | *Picard v. Sylvan Assocs. LLC, et al.* | 10-04961 | Becker & Poliakoff, LLP |
| 50 | *Picard v. Melvin H. and Leona Gale Joint Revocable Living Trust u/a/d 1/4/94, et al.* | 10-04993 | Becker & Poliakoff, LLP |
| 51 | *Picard v. Trust u/art Fourth o/w/o Israel Wilentz, et al.* | 10-04995 | Becker & Poliakoff, LLP |
| 52 | *Picard v. Walter Freshman Trust A, a Florida trust, et al.* | 10-05026 | Becker & Poliakoff, LLP |
| 53 | *Picard v. Benjamin, et al.* | 10-05102 | Becker & Poliakoff, LLP |
| 54 | *Picard v. Robert C. Luker Family P'ship, et al.* | 10-05105 | Becker & Poliakoff, LLP |
| 55 | *Picard v. The Lawrence J. Ryan and Theresa R. Ryan Revocable Living Trust, et al.* | 10-05124 | Becker & Poliakoff, LLP |
| 56 | *Picard v. Estate of Boyer Palmer, et al.* | 10-05133 | Becker & Poliakoff, LLP |
| 57 | *Picard v. Bert Brodsky Assocs., Inc. Pension Plan, et al.* | 10-05148 | Becker & Poliakoff, LLP |
| 58 | *Picard v. Palmer Family Trust, et al.* | 10-05151 | Becker & Poliakoff, LLP |
| 59 | *Picard v. Blue Bell Lumber and Moulding Co., Inc. Profit Sharing Plan, et al.* | 10-05154 | Becker & Poliakoff, LLP |
| 60 | *Picard v. The Harnick Bros. P'ship, et al.* | 10-05157 | Becker & Poliakoff, LLP |
| 61 | *Picard v. Laura Ann Smith Revocable Living Trust, et al.* | 10-05184 | Becker & Poliakoff, LLP |
| 62 | *Picard v. The Lazarus-Schy Family P'ship, a Florida gen. P'ship, et al.* | 10-05190 | Becker & Poliakoff, LLP |
| 63 | *Picard v. Trust for the Benefit of Ryan Tavlin, et al.* | 10-05232 | Becker & Poliakoff, LLP[35] |
| 64 | *Picard v. Doron Tavlin Trust U/A 2/4/91, et al.* | 10-05312 | Becker & Poliakoff, LLP[36] |

[35]      In connection with the *B&P Motions*, Becker & Poliakoff, LLP represents defendants Trust for the Benefit of Ryan Tavlin; Doron Tavlin, in his capacity as Trustee for the Trust for the Benefit of Ryan Tavlin; Omega Asset Management, LLC; and Ryan Tavlin, individually as beneficiary of the Trust for the Benefit of Ryan Tavlin.  (*See Stipulation*, dated April 16, 2014 (ECF Adv. Pro. No. 10-5232 Doc. # 40).)

[36]      In this adversary proceeding, Becker & Poliakoff, LLP represents defendants Doron Tavlin Trust U/A 2/4/91; Doron A. Tavlin, as Trustee and Beneficiary of the Doron Tavlin Trust U/A 2/4/91; and Omega Asset Management, LLC.

| | Case Name | Adv. Pro. No. | Defense Counsel |
|---|---|---|---|
| 65 | *Picard v. Eaton* | 10-05377 | Becker & Poliakoff, LLP |
| 66 | *Picard v. Unflat, et al.* | 10-05420 | Becker & Poliakoff, LLP |
| 67 | *Picard v. Schaffer, et al.* | 10-05435 | Becker & Poliakoff, LLP |
| 68 | *Picard v. Realty Negotiators Defined Pension Plan, et al.* | 10-05438 | Becker & Poliakoff, LLP |
| 69 | *Picard v. Wechsler* | 10-05443 | Becker & Poliakoff, LLP |
| 70 | *Picard v. Cutroneo, et al.* | 10-04303 | Becker & Poliakoff, LLP[37] |
| 71 | *Picard v. RAR Entrepreneurial Fund, LTD., et al.* | 10-04352 | Becker & Poliakoff, LLP[38] |
| 72 | *Picard v. Yesod Fund, a trust* | 10-04391 | Becker & Poliakoff, LLP |
| 73 | *Picard v. Meisels* | 10-04428 | Becker & Poliakoff, LLP |
| 74 | *Picard v. Trust U/W/O Morris Weintraub FBO Audrey Weintraub, et al.* | 10-04434 | Becker & Poliakoff, LLP |
| 75 | *Picard v. Estate of Seymour Epstein, et al.* | 10-04438 | Becker & Poliakoff, LLP |
| 76 | *Picard v. Trust Under Agreement Dated 12/6/99 for the benefit of Walter and Eugenie Kissinger, et al.* | 10-04446 | Becker & Poliakoff, LLP |
| 77 | *Picard v. Roger Rechler Revocable Trust* | 10-04474 | Becker & Poliakoff, LLP |
| 78 | *Picard v. Estate of Audrey Weintraub, et al.* | 10-04487 | Becker & Poliakoff, LLP |
| 79 | *Picard v. Krauss* | 10-04489 | Becker & Poliakoff, LLP |
| 80 | *Picard v. Elaine Dine Living Trust dated 5/12/06, et al.* | 10-04491 | Becker & Poliakoff, LLP |
| 81 | *Picard v. The Gerald and Barbara Keller Family Trust, et al.* | 10-04539 | Becker & Poliakoff, LLP |
| 82 | *Picard v. Perlman, et al.* | 10-04541 | Becker & Poliakoff, LLP[39] |
| 83 | *Picard v. Goodman, et al.* | 10-04545 | Becker & Poliakoff, LLP |
| 84 | *Picard v. Jacob M. Dick Rev Living Trust DTD 4/6/01, et al.* | 10-04570 | Becker & Poliakoff, LLP[40] |

[37]    In this adversary proceeding, Becker & Poliakoff, LLP represents defendant Garynn Rodner Cutroneo.

[38]    In this adversary proceeding, Becker & Poliakoff, LLP represents defendants RAR Entrepreneurial Fund, Ltd. and Russell Oasis.

[39]    In this adversary proceeding, Becker & Poliakoff, LLP represents defendants Felice J. Perlman and Sanford S. Perlman.

[40]    In this adversary proceeding, Becker & Poliakoff, LLP represents defendants Jacob M. Dick Rev Living Trust DTD 4/6/01, individually and as tenant in common; Estate of Jacob M. Dick, as grantor of the Jacob M. Dick Rev Living Trust DTD 4/6/01; Andrea J. Marks, trustee and beneficiary of Jacob M. Dick Rev Living Trust DTD

|    | **Case Name** | **Adv. Pro. No.** | **Defense Counsel** |
|----|---------------|-------------------|---------------------|
| 85 | *Picard v. A. Shulman* | 10-04599 | Becker & Poliakoff, LLP |
| 86 | *Picard v. Estate of Florence W. Shulman, et al.* | 10-04606 | Becker & Poliakoff, LLP |
| 87 | *Picard v. Whitman* | 10-04614 | Becker & Poliakoff, LLP |
| 88 | *Picard v. Estate of Richard S. Poland, et al.* | 10-04633 | Becker & Poliakoff, LLP |
| 89 | *Picard v. P. Kamenstein* | 10-04648 | Becker & Poliakoff, LLP |
| 90 | *Picard v. P.B. Robco Inc.* | 10-04660 | Becker & Poliakoff, LLP |
| 91 | *Picard v. Garten* | 10-04682 | Becker & Poliakoff, LLP |
| 92 | *Picard v. Clothmasters, Inc.* | 10-04694 | Becker & Poliakoff, LLP |
| 93 | *Picard v. Goodman* | 10-04709 | Becker & Poliakoff, LLP |
| 94 | *Picard v. The Jordan H. Kart Revocable Trust, et al.* | 10-04718 | Becker & Poliakoff, LLP |
| 95 | *Picard v. Digiulian* | 10-04728 | Becker & Poliakoff, LLP |
| 96 | *Picard v. J.Z. Personal Trust, et al.* | 10-04733 | Becker & Poliakoff, LLP |
| 97 | *Picard v. Horowitz, et al.* | 10-04748 | Becker & Poliakoff, LLP |
| 98 | *Picard v. Palmedo* | 10-04749 | Becker & Poliakoff, LLP |
| 99 | *Picard v. Estate of James M. Goodman, et al.* | 10-04762 | Becker & Poliakoff, LLP |
| 100 | *Picard v. Placon2, et al.* | 10-04768 | Becker & Poliakoff, LLP |
| 101 | *Picard v. Alvin E. Shulman Pourover Trust, et al.* | 10-04852 | Becker & Poliakoff, LLP |
| 102 | *Picard v. Bert Margolies Trust, et al.* | 10-04859 | Becker & Poliakoff, LLP |
| 103 | *Picard v. Rautenberg* | 10-04876 | Becker & Poliakoff, LLP |
| 104 | *Picard v. R. Savin* | 10-04889 | Becker & Poliakoff, LLP |
| 105 | *Picard v. Train Klan, a P'ship, et al.* | 10-04905 | Becker & Poliakoff, LLP |
| 106 | *Picard v. Harry Smith Revocable Living Trust, et al.* | 10-04912 | Becker & Poliakoff, LLP |
| 107 | *Picard v. Andelman* | 10-04916 | Becker & Poliakoff, LLP |
| 108 | *Picard v. Glenhaven Ltd., et al.* | 10-04920 | Becker & Poliakoff, LLP |
| 109 | *Picard v. James M. New Trust dtd 3/19/01, et al.* | 10-04979 | Becker & Poliakoff, LLP |
| 110 | *Picard v. Guiducci Family Ltd. P'ship, et al.* | 10-04991 | Becker & Poliakoff, LLP |
| 111 | *Picard v. Ehrmann, et al.* | 10-05032 | Becker & Poliakoff, LLP |

4/6/01, executor and beneficiary of Estate of Jacob M. Dick, and trustee of Article 8.1 Trust created under Jacob M. Dick Rev Living Trust DTD 4/6/01; R.D.A., a minor, as beneficiary of the Article 8.1 Trust created under the Jacob M. Dick Rev Living Trust DTD 4/6/01; Rio Jocelyn Breen, as beneficiary of the Article 8.1 Trust created under the Jacob M. Dick Rev Living Trust DTD 4/6/01; Article 8.1 Trust; and Suzanne Breen, as beneficiary of the Estate of Jacob M. Dick and the Jacob M. Dick Rev Living Trust DTD 4/6/01.

|  | **Case Name** | **Adv. Pro. No.** | **Defense Counsel** |
|---|---|---|---|
| 112 | *Picard v. B. Savin* | 10-05037 | Becker & Poliakoff, LLP |
| 113 | *Picard v. Marilyn Turk Revocable Trust, et al.* | 10-05041 | Becker & Poliakoff, LLP |
| 114 | *Picard v. Bevro Realty Corp. Defined Benefit Pension Plan, et al.* | 10-05051 | Becker & Poliakoff, LLP |
| 115 | *Picard v. The Celeste & Adam Bartos Charitable Trust, et al.* | 10-05064 | Becker & Poliakoff, LLP |
| 116 | *Picard v. Estate of James M. Goodman* | 10-05079 | Becker & Poliakoff, LLP |
| 117 | *Picard v. C. Benjamin, et al.* | 10-05102 | Becker & Poliakoff, LLP |
| 118 | *Picard v. The Gloria Albert Sandler and Maurice Sandler Revocable Living Trust, et al.* | 10-05104 | Becker & Poliakoff, LLP |
| 119 | *Picard v. Stony Broof Found., Inc.* | 10-05106 | Becker & Poliakoff, LLP |
| 120 | *Picard v. Leonard J. Oguss Trust, et al.* | 10-05116 | Becker & Poliakoff, LLP |
| 121 | *Picard v. Atwood Mgmt. Profit Sharing Plan & Trust, et al.* | 10-05127 | Becker & Poliakoff, LLP |
| 122 | *Picard v. JABA Assocs. LP, et al.* | 10-05128 | Becker & Poliakoff, LLP |
| 123 | *Picard v. Reckson Generation, et al.* | 10-05135 | Becker & Poliakoff, LLP |
| 124 | *Picard v. Plafsky Family LLC Retirement Plan, et al.* | 10-05150 | Becker & Poliakoff, LLP |
| 125 | *Picard v. Blue Bell Lumber and Moulding Company, Inc. Profit Sharing Plan, et al.* | 10-05154 | Becker & Poliakoff, LLP |
| 126 | *Picard v. Irene Whitman 1990 Trust U/A DTD 4/13/90, et al.* | 10-05196 | Becker & Poliakoff, LLP |
| 127 | *Picard v. William Pressman, Inc., et al.* | 10-05309 | Becker & Poliakoff, LLP[41] |
| 128 | *Picard v. The Estate of Nathan Schupak, et al.* | 12-01706 | Becker & Poliakoff, LLP |
| 129 | *Picard v. Estate of Eleanor Myers, et al.* | 10-05401 | Milberg LLP[42] |

[41]    In this adversary proceeding, Becker & Poliakoff, LLP represents defendants Irene May; Shirley Blank; and Allan Wilson.

[42]    Milberg LLP
One Pennsylvania Avenue
New York, NY 10119

Matthew Gluck, Esq.
Matthew A. Kupillas, Esq.
Jennifer L. Young, Esq.
Joshua E. Keller, Esq.
    Of Counsel

In this adversary proceeding, Milberg LLP represents defendant Trust U/W/O Harriet Myers.

| | Case Name | Adv. Pro. No. | Defense Counsel |
|---|---|---|---|
| 130 | *Picard v. E. Gorek, et al.* | 10-04797 | Day Pitney LLP[43] |
| 131 | *Picard v. E. Gorek* | 10-04623 | Day Pitney LLP |
| 132 | *Picard v. P. Feldman* | 10-04349 | Bernfeld, DeMatteo & Bernfeld, LLP[44] |
| 133 | *Picard v. Konigsberg, et al.* | 10-04394 | Bernfeld, DeMatteo & Bernfeld, LLP[45] |
| 134 | *Picard v. Schur* | 10-04396 | Bernfeld, DeMatteo & Bernfeld, LLP |
| 135 | *Picard v. Yankowitz, et al.* | 10-04408 | Bernfeld, DeMatteo & Bernfeld, LLP |
| 136 | *Picard v. Ken-Wen Family Ltd. P'ship, et al.* | 10-04468 | Bernfeld, DeMatteo & Bernfeld, LLP[46] |
| 137 | *Picard v. R. Feldman* | 10-04560 | Bernfeld, DeMatteo & Bernfeld, LLP |
| 138 | *Picard v. Jeffrey R. Werner 11/1/98 Trust, et al.* | 10-04561 | Bernfeld, DeMatteo & Bernfeld, LLP |
| 139 | *Picard v. William Diamond* | 10-04717 | Bernfeld, DeMatteo & Bernfeld, LLP |
| 140 | *Picard v. The Estate of Carolyn Miller, et al.* | 10-05094 | Bernfeld, DeMatteo & Bernfeld, LLP |
| 141 | *Picard v. Trust under Deed of Suzanne R. May dated November 23, 1994, et al.* | 10-05231 | Bernfeld, DeMatteo & Bernfeld, LLP |
| 142 | *Picard v. Harvey L. Werner Revocable* | 10-04361 | Bernfeld, DeMatteo & |

---

[43]    Day Pitney LLP
7 Times Square
New York, NY 10036

Thomas D. Goldberg, Esq.
Margarita Y. Ginzburg, Esq.
Of Counsel

[44]    Bernfeld, DeMatteo & Bernfeld, LLP
600 Third Avenue, 15th Floor
New York, NY 10016

David R. Bernfeld, Esq.
Jeffrey L. Bernfeld, Esq.
Joseph R. DeMatteo, Esq.
Of Counsel

[45]    In this adversary proceeding, Bernfeld, DeMatteo & Bernfeld, LLP represents defendants Frederic Z. Konigsberg; Susan M. Konigsberg; Lee Rautenberg; and Bradermark, Ltd.

[46]    In this adversary proceeding, Bernfeld, DeMatteo & Bernfeld, LLP represents defendants Ken-Wen Family Ltd. P'ship; Kenneth W. Brown; and Wendy Brown.

| | Case Name | Adv. Pro. No. | Defense Counsel |
|---|---|---|---|
| | *Trust U/A/D 8/31/82. as amended, et al.* | | Bernfeld, LLP |
| 143 | *Picard v. Schnall* | 10-04772 | Herbet Beigel & Associates[47] |
| 144 | *Picard v. Jaffe Family Inv. P'ship, et al.* | 10-04655 | Lax & Neville LLP[48] |
| 145 | *Picard v. Kaye, et al.* | 10-04756 | Lax & Neville LLP |
| 146 | *Picard v. Kansler* | 10-04900 | Lax & Neville LLP |
| 147 | *Picard v. Livingston* | 10-04881 | Lax & Neville LLP |
| 148 | *Picard v. Wallenstein* | 10-04467 | Lax & Neville LLP |
| 149 | *Picard v. H. Solomon* | 10-04307 | Lax & Neville LLP |
| 150 | *Picard v. Wallenstein/NY P'ship, et al.* | 10-04988 | Lax & Neville LLP |
| 151 | *Picard v. The Estate of Madeline Gins Arakawa, et al.* | 10-04827 | Lax & Neville LLP[49] |
| 152 | *Picard v. Fujiwara, et al.* | 10-04289 | Lax & Neville LLP |
| 153 | *Picard v. Bloom* | 10-04301 | Lax & Neville LLP |
| 154 | *Picard v. E. Solomon* | 10-04304 | Lax & Neville LLP |
| 155 | *Picard v. Abbit Family Trust 9/7/90, et al.* | 10-04647 | Lax & Neville LLP |
| 156 | *Picard v. Fairfield Pagma Associates, LP, a New York Ltd. P'ship, et al.* | 10-05169 | Lax & Neville LLP |
| 157 | *Picard v. The Frances J. Le Vine Revocable Trust, et al.* | 10-05246 | Lax & Neville LLP |
| 158 | *Picard v. Kahn* | 10-04954 | Lax & Neville LLP |
| 159 | *Picard v. Felcher* | 10-05036 | Lax & Neville LLP |
| 160 | *Picard v. Yan, et al.* | 10-05048 | Lax & Neville LLP[50] |

---

[47]   Herbet Beigel & Associates
38327 S. Arroyo Way
Tucson, AZ 85739

    Herbert Beigel, Esq.
    Of Counsel

[48]   Lax & Neville LLP
1450 Broadway, 35th Floor
New York, NY 10018

    Barry R. Lax, Esq.
    Brian J. Neville, Esq.
    Gabrielle Pretto, Esq.
    Of Counsel

[49]   Lax & Neville LLP represented the defendants in this adversary proceeding in connection with their motion to dismiss, but was subsequently replaced by Carter Ledyard & Milburn LLP. (*See Order Authorizing Substitution of Counsel,* dated May 6, 2014 (ECF Adv. Pro. No. 10-04827 Doc. # 44).)

[50]   In this adversary proceeding, Lax & Neville LLP represents defendant Peng Yan.

| | Case Name | Adv. Pro. No. | Defense Counsel |
|---|---|---|---|
| 161 | *Picard v. The Lanny Rose Revocable Trust, a Florida trust, et al.* | 10-05160 | Lax & Neville LLP |
| 162 | *Picard v. Bruce Leventhal 2001 Irrevocable Trust, et al.* | 10-04573 | Lax & Neville LLP |
| 163 | *Picard v. Onesco Int'l, Ltd., et al.* | 10-04966 | Lax & Neville LLP[51] Milberg LLP[52] |
| 164 | *Picard v. Goldberg, et al.* | 10-05400 | Wachtel Missry LLP[53] |
| 165 | *Picard v. Chemla, et al.* | 10-04726 | Wachtel Missry LLP |
| 166 | *Picard v. Shetland Fund Ltd. P'ship, et al.* | 10-04579 | Wachtel Missry LLP |
| 167 | *Picard v. Feffer* | 10-04896 | Wachtel Missry LLP |
| 168 | *Picard v. O.D.D. Inv., L.P., et al.* | 10-05372 | Wachtel Missry LLP |
| 169 | *Picard v. Schiff* | 10-04502 | Wachtel Missry LLP |
| 170 | *Picard v. Schiff Family Holdings Nevada Ltd. P'ship, et al.* | 10-04363 | Wachtel Missry LLP |
| 171 | *Picard v. Sands* | 10-04447 | Wachtel Missry LLP |
| 172 | *Picard v. Silna, et al.* | 10-04472 | Wachtel Missry LLP |
| 173 | *Picard v. The Silna Family Inter Vivos Trust, et al.* | 10-04470 | Wachtel Missry LLP |
| 174 | *Picard v. Greiff* | 10-04357 | Dentons US LLP[54] |
| 175 | *Picard v. Kaye* | 10-04796 | McLaughlin & Stern LLP[55] |

---

[51]     In this adversary proceeding, Lax & Neville LLP represents defendant Robin G. Swaffield.

[52]     In this adversary proceeding, Milberg LLP represents defendant Gary Albert.

[53]     Wachtel Missry LLP
        885 Second Avenue
        New York, NY 10017

                Howard Kleinhendler, Esq.
                Sara Spiegelman, Esq.
                        Of Counsel

[54]     Dentons US LLP
        1221 Avenue of the Americas
        New York, NY 10020

                Carole Neville, Esq.
                        Of Counsel

[55]     McLaughlin & Stern LLP
        260 Madison Avenue
        New York, NY 10016

                Lee S. Shalov, Esq.
                Marc Rosenberg, Esq.

|  | Case Name | Adv. Pro. No. | Defense Counsel |
|---|---|---|---|
| 176 | *Picard v. Lindenbaum* | 10-04481 | Lax & Neville LLP |
| 177 | *Picard v. Pergament Equities, LLC, et al.* | 10-04944 | Pryor Cashman LLP[56] |
| 178 | *Picard v. Pergament, et al.* | 10-05194 | Pryor Cashman LLP |
| 179 | *Picard v. Steven V Marcus Separate Prop. of the Marcus Family Trust, et al.* | 10-04906 | Milberg LLP |
| 180 | *Picard v. Hein* | 10-04861 | Dentons US LLP |
| 181 | *Picard v. Miller* | 10-04921 | Dentons US LLP |
| 182 | *Picard v. Cole* | 10-04672 | Dentons US LLP |
| 183 | *Picard v. Berdon* | 10-04415 | Dentons US LLP |
| 184 | *Picard v. Lapin Children LLC* | 10-05209 | Dentons US LLP |
| 185 | *Picard v. Weisfeld* | 10-04332 | Dentons US LLP |
| 186 | *Picard v. Rose Gindel Trust, et al.* | 10-04401 | Dentons US LLP |
| 187 | *Picard v. Eugene J. Ribakoff 2006 Trust, et al.* | 10-05085 | Dentons US LLP |
| 188 | *Picard v. The Frederica Ripley French Revocable Trust, et al.* | 10-05424 | Dentons US LLP |
| 189 | *Picard v. Markin, et al.* | 10-05224 | Dentons US LLP |
| 190 | *Picard v. Alvin Gindel Revocable Trust, a Florida trust, et al.* | 10-04925 | Dentons US LLP |
| 191 | *Picard v. Neil Reger Profit Sharing Keogh, et al.* | 10-05384 | Dentons US LLP |
| 192 | *Picard v. Am. Israel Cultural Found., Inc.* | 10-05058 | Dentons US LLP |
| 193 | *Picard v. Thau* | 10-04951 | Milberg LLP |
| 194 | *Picard v. Goldenberg* | 10-04946 | Milberg LLP |
| 195 | *Picard v. John Denver Concerts, Inc. Pension Plan Trust, et al.* | 10-05089 | Milberg LLP |
| 196 | *Picard v. Aspen Fine Arts Co., et al.* | 10-04335 | Milberg LLP |
| 197 | *Picard v. Estate of Ira S. Rosenberg, et al.* | 10-04978 | Milberg LLP |

Of Counsel

[56]    Pryor Cashman LLP
7 Time Square
New York, NY 10036

Richard Levy, Jr., Esq.
David C. Rose, Esq.
Of Counsel

In this adversary proceeding, Pryor Cashman LLP represents defendants Robert Pergament; and Lois Pergament.

| | Case Name | Adv. Pro. No. | Defense Counsel |
|---|---|---|---|
| 198 | *Picard v. Goldstein* | 10-04725 | Milberg LLP |
| 199 | *Picard v. Potamkin Family Found. Inc.* | 10-05069 | Milberg LLP |
| 200 | *Picard v. Eisenberg* | 10-04576 | Milberg LLP |
| 201 | *Picard v. William M. Woessner Family Trust, et al.* | 10-04741 | Milberg LLP[57] |
| 202 | *Picard v. Gabriele* | 10-04724 | Milberg LLP |
| 203 | *Picard v. Blumenthal* | 10-04582 | Milberg LLP |
| 204 | *Picard v. Roth* | 10-05136 | Milberg LLP |
| 205 | *Picard v. Sobin* | 10-04540 | Seeger Weiss LLP[58] |
| 206 | *Picard v. J. Marden, et al.* | 10-04341 | Pryor Cashman LLP |
| 207 | *Picard v. Marden Family Ltd. P'ship, a Delaware Ltd. P'ship, et al.* | 10-04348 | Pryor Cashman LLP |
| 208 | *Picard v. Fried, et al.* | 10-05239 | Pryor Cashman LLP |
| 209 | *Picard v. Goldberg, et al.* | 10-05439 | Pryor Cashman LLP |
| 210 | *Picard v. C. Marden, et al.* | 10-05118 | Pryor Cashman LLP |
| 211 | *Picard v. Boslow Family Ltd. P'ship, et al.* | 10-04575 | Pryor Cashman LLP |
| 212 | *Picard v. Bernard A. & Chris Marden Foundation Inc., et al.* | 10-05397 | Pryor Cashman LLP |
| 213 | *Picard v. The Murray & Irene Pergament Found., Inc., et al.* | 10-04565 | Pryor Cashman LLP |
| 214 | *Picard v. Estate of Hermen Greenberg, et al.* | 10-04998 | Arent Fox LLP[59] |
| 215 | *Picard v. 1776 K St. Assocs. Ltd. P'ship, a Virginia Ltd. P'ship, et al.* | 10-05027 | Arent Fox LLP |

---

[57]     In this adversary proceeding, Milberg LLP represents defendants William M. Woessner Family Trust; Sheila A. Woessner Family Trust; William M. Woessner; and Sheila A. Woessner.

[58]     Seeger Weiss LLP
         77 Water Street, 26th Floor
         New York, NY 10005

                 Stephen A. Weiss, Esq.
                 Parvin K. Aminolroaya, Esq.
                         Of Counsel

[59]     Arent Fox LLP
         1050 Connecticut Avenue NW
         Washington, DC 20036

                 James H. Hulme, Esq.
                 Joshua A. Fowkes, Esq.
                 Heike M. Vogel, Esq.
                         Of Counsel

| | Case Name | Adv. Pro. No. | Defense Counsel |
|---|---|---|---|
| 216 | *Picard v. Eleven Eighteen Ltd. P'ship, a District of Columbia Ltd. P'ship, et al.* | 10-04976 | Arent Fox LLP |
| 217 | *Picard v. Kaplan, et al.* | 10-04865 | Arent Fox LLP |
| 218 | *Picard v. Olshan* | 10-04799 | Olshan Frome Wolosky LLP[60] |
| 219 | *Picard v. Wilson* | 10-04774 | Simon & Partners LLP[61] |
| 220 | *Picard v. Johnson* | 10-04551 | Herrick, Feinstein LLP[62] |
| 221 | *Picard v. Sidney Marks Trust 2002, et al.* | 10-04370 | Wilmer Cutler Pickering Hale and Dorr LLP[63] |
| 222 | *Picard v. Nancy J. Marks Trust 2002, et al.* | 10-04698 | Wilmer Cutler Pickering Hale and Dorr LLP |
| 223 | *Picard v. Weithorn/ Casper Assocs. for Selected Holdings, LLC, et al.* | 10-04511 | Becker, Glynn, Muffly, Chassin & Hosinski LLP[64] |

---

[60]   65 East 55th Street
New York, NY 10022

     Thomas J. Fleming, Esq.
     Joshua S. Androphy, Esq.
     Of Counsel

[61]   Simon & Partners LLP
551 Fifth Avenue
New York, NY 10176

     Bradley D. Simon, Esq.
     Kenneth C. Murphy, Esq.
     Jonathan Stern, Esq.
     Of Counsel

[62]   Herrick, Feinstein LLP
2 Park Avenue
New York, NY 10016

     Howard R. Elisofon, Esq.
     Hanh V. Huynh, Esq.
     Of Counsel

[63]   Hale and Dorr LLP
399 Park Avenue
New York, NY 10022

     Charles C. Platt, Esq.
     Of Counsel

[64]   Becker, Glynn, Muffly, Chassin & Hosinski LLP
299 Park Avenue, 16th Floor
New York, NY 10171

     Chester B. Salomon, Esq.

| | Case Name | Adv. Pro. No. | Defense Counsel |
|---|---|---|---|
| 224 | *Picard v. Katz Grp. Ltd. P'ship, a Wyoming Ltd. P'ship, et al.* | 10-04419 | Becker Meisel LLC[65] |
| 225 | *Picard v. Glick* | 10-04495 | Becker, Glynn, Muffly, Chassin & Hosinski LLP |
| 226 | *Picard v. Prospect Capital Partners, et al.* | 10-04435 | Becker, Glynn, Muffly, Chassin & Hosinski LLP |
| 227 | *Picard v. Washburn* | 10-04294 | Becker, Glynn, Muffly, Chassin & Hosinski LLP |
| 228 | *Picard v. Weiner Family Limited. Partnership, et al.* | 10-04323 | Fox Rothschild LLP[66] |
| 229 | *Picard v. Weiner* | 10-04293 | Fox Rothschild LLP |
| 230 | *Picard v. L.H. Rich Cos., et al.* | 10-05371 | Garvey Schubert Barer, Esq.[67] |
| 231 | *Picard v. Irving J. Pinto 1996 Grantor Retained Annuity Trust, et al.* | 10-04744 | Bruce S. Shaeffer, Esq.[68] |

Alec P. Ostrow, Esq.
Of Counsel

[65]    Becker Meisel LLC
590 Madison Avenue, 21st Floor
New York, NY 10022

Stacey L. Meisel, Esq.
Of Counsel

[66]    Fox Rothschild LLP
100 Park Avenue, 15th Floor
New York, NY 10017

Ernest E. Badway, Esq.
Lauren J. Talan, Esq.
Of Counsel

[67]    Garvey Schubert Barer, Esq.
100 Wall Street, 20th Floor
New York, NY 10005

Andrew J. Goodman, Esq.
Of Counsel

[68]    Bruce S. Shaeffer, Esq.
404 Park Avenue South
New York, NY 10016

Bruce S. Schaeffer, Esq.
Of Counsel

Defendents' dismissal motion was filed by Bruce S. Shaeffer but the defendants are now represented by Marvin C. Ingber and McClay Alton, P.L.L.P.

| | Case Name | Adv. Pro. No. | Defense Counsel |
|---|---|---|---|
| 232 | *Picard v. James B. Pinto Revocable Trust U/A dtd 12/1/03, et al.* | 10-04538 | Bruce S. Shaeffer, Esq.[69] |
| 233 | *Picard v. Amy Pinto Lome Revocable Trust U/A/D 5/22/03* | 10-04588 | Bruce S. Shaeffer, Esq.[70] |

---

[69]    Defendents' dismissal motion was filed by Bruce S. Shaeffer but the defendants are now represented by Marvin C. Ingber and McClay Alton, P.L.L.P..

[70]    Defendents' dismissal motion was filed by Bruce S. Shaeffer but the defendants are now represented by Marvin C. Ingber and McClay Alton, P.L.L.P..